2016 PA Super 310

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARQUIS LEE RAYNER, | |
| Appellant | No. 1263 EDA 2015 |

Appeal from the Judgment of Sentence April 17, 2015
in the Court of Common Pleas of Chester County
Criminal Division at No.: CP-15-CR-0001737-2013

BEFORE: PANELLA, J., SHOGAN, J., and PLATT, J.[*]

OPINION BY PLATT, J.:                         **FILED DECEMBER 29, 2016**

Appellant, Marquis Lee Rayner, appeals from the judgment of sentence imposed following his jury conviction of murder of the second degree, robbery, burglary, and conspiracy to commit robbery.[1] We affirm.

The trial court aptly set forth the facts and procedural history of this case, as follows:

> Shortly after midnight on June 29, 2012, three armed men burst into the living room of the apartment shared by Dominick Williams and Aaron Crawford. Mr. Crawford was asleep in his bedroom. Mr. Williams was awake and playing video games in the living room. All three intruders wore t-shirts wrapped around their faces to disguise their identity. One of the intruders immediately shot Mr. Williams in the groin. Another of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1), 3502(a), and 903, respectively.

intruders went to Mr. Crawford's bedroom and grabbed a clear, plastic jar that contained marijuana, money and a pack of cigarettes. All three intruders then ran from the apartment. Dominick Williams remained on his living room floor bleeding to death. Later, at the hospital, he died.

Shortly after the robbery[,] the police located the plastic jar about two blocks away from the victim's apartment. Located nearby was a black t-shirt. Subsequent testing revealed the presence of co-defendant Dominique Lee's[2] thumbprint on the jar, and [Appellant's] DNA on the t-shirt. [Appellant] and Dominique Lee, who are half-brothers, were subsequently arrested for the murder of Dominick Williams.

On November 20, 2014, after a four-day trial, a jury found Appellant guilty of second degree murder, robbery, burglary, and criminal conspiracy. He was sentenced to life in prison on April 17, 2015. [The trial court] denied his optional post-sentence motion by order dated April 23, 2015.

This [timely] appeal followed.[3]

(Trial Court Opinion, 5/03/16, at 1-2).

Appellant raises five issues for the Court's review.

1. Were the convictions for murder of the second degree, robbery, burglary and conspiracy to commit robbery and burglary against the weight of the evidence? Were the verdicts against the weight of the evidence when the only evidence was [Appellant's] DNA on a black tee shirt found [one and one-half] blocks from the crime and [fifteen] feet from a jar taken from the house, which jar had his half-brother's fingerprints?

---

[2] Dominique Lee also has filed an appeal at docket number 1299 EDA 2015.

[3] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on May 5, 2015. *See* Pa.R.A.P. 1925(b). After receiving the court's permission, Appellant also filed a supplemental statement on September 29, 2015. The trial court filed an opinion on May 3, 2016. *See* Pa.R.A.P. 1925(a).

2. Were the convictions for murder of the second degree, robbery, burglary and conspiracy to commit robbery and burglary not supported by sufficient evidence?

3. Did the Assistant District Attorney err in his opening statement and err when presenting Detective Dutter by stating his office received an anonymous tip linking Dominique Lee (half-brother of [Appellant]) as a participant in the crime? Did [the trial court] err in denying the defense request for a mistrial? Did this intentional error violate [Appellant's] right to confront a critical witness in violation of the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution and further, was this improper hearsay, particularly since [Appellant] was charged with conspiracy?

4. Did [the Commonwealth] err in [its] closing speech by incorrectly suggesting [Appellant] kept the alibi defense a secret until the last day of trial when, in fact, the alibi notice had been filed long before the trial, and did the [Commonwealth] err in giving [a] personal opinion that [Appellant] was guilty? Did [the trial court] err in not granting a timely mistrial?

5. Did [the trial court] err by interfering improperly with [defense counsel's] cross-examination of a key prosecution witness on his critical testimony on the tee shirt, and did [the trial court] err in criticizing [defense counsel] before the jury? Did [the trial court] further err in repeatedly and incorrectly criticizing [defense counsel] during his closing argument on the issue of burden of proof? Did [the trial court] wrongly criticize [defense counsel] in front of the jury? Did [the trial court] err in not granting a mistrial? Did [the trial court's] improper inference and criticism of [defense counsel] prejudice [Appellant], deny him a fair trial, and impact on [Appellant's] [Sixth] Amendment right to effective counsel?

(Appellant's Brief, at 6-8).

Appellant's first two issues challenge the sufficiency and weight of the evidence to support his convictions. (*See id.* at 41-55).[4] For ease of disposition, we will address Appellant's sufficiency challenge first, and then his weight of the evidence claim.

In his second issue, Appellant argues that the evidence was insufficient to support the verdict because it required pure speculation. (*See* Appellant's Brief, at 49-55). Appellant's issue lacks merit.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

---

[4] Although Appellant recognizes that each of these issues has its own standard of review, (*see* Appellant's Brief, at 49), he appears to confuse the legal concepts. (*See id.* at 41-55). For example, "[a] motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (citation omitted). However, in support of his weight of the evidence challenge, Appellant repeatedly states that the Commonwealth failed to prove the elements necessary to support his convictions. (*See* Appellant's Brief, at 44-46). Also, in his sufficiency challenge, Appellant maintains that "[t]he speculative and conflicting nature of the testimony would warrant a reversal on the basis of sufficiency of evidence." (Appellant's Brief, at 52). However, this allegation goes to the weight of the evidence. *See Commonwealth v. Doleno*, 633 A.2d 203, 206 (Pa. Super. 1993) ("claim goes to the weight of the evidence because it depends upon a resolution of the conflicting testimony of competing witnesses.").

- 4 -

*Commonwealth v. Taylor*, 137 A.3d 611, 614 (Pa. Super. 2016) (citation omitted).  In this case, Appellant was convicted of murder of the second degree, robbery, burglary, and conspiracy.

Pursuant to section 2502(b) of the Crimes Code, "[a] criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony."  18 Pa.C.S.A. § 2502(b).  The Crimes Code also provides, in pertinent part, that "[a] person is guilty of robbery if, in the course of committing a theft, he . . . inflicts serious bodily injury upon another [or] threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]"  18 Pa.C.S.A. §§ 3701(a)(1)(i), (ii).  It further provides, "[a] person commits the offense of burglary if, with the intent to commit a crime therein, the person . . . enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]"  18 Pa.C.S.A. § 3502(a)(1).  Finally:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he . . . agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime . . . or . . . agrees to aid such other person or persons in the planning or commission of such crime . . . .

18 Pa.C.S.A. § 903(a).

In this case, the evidence at trial established that three men broke into Dominick Williams' apartment with the intent of robbing him. (**See** N.T. Trial, 11/17/14, at 67, 69, 150). The men were armed with guns and wore t-shirts across their faces. (**See id.** at 66-68, 77, 118-119, 132). After shooting Mr. Williams, and pistol whipping his roommate, Aaron Crawford, one of the men stole a plastic-lidded jar that contained marijuana and other items. (**See id.** 155-57). The individual was not wearing gloves. (**See id.** at 150).

As further described by the trial court:

> Approximately [ninety] minutes after Dominick Williams had been shot, police officer Stephen Galletta of the Coatesville City Police Department located the clear plastic jar tossed in a hedge row approximately a block and a half from the crime scene. (**See id.** at 244). The jar contained a pack of Newport cigarettes. (**See id.** at 163). Located several feet away was a black t-shirt. (**See id.** at 244, 248). Witness Aaron Crawford was brought to the discovery scene and identified the jar as the one taken from his bedroom earlier that morning, and the t-shirt as the type of shirt that one of the robbers had been wearing across his face. (**See id.** at 161-64).
>
> Chester County Detective Kenneth Beam testified as an expert in the field of fingerprint analysis. Detective Beam received as evidence the plastic jar and t-shirt found close to the scene of the robbery. (**See** N.T. Trial, 11/18/14, at 49). Detective Bean testified that the print with the sharpest and clearest detail found on the plastic jar belonged to co-defendant Dominique Lee. (**See id.** at 65, 69, 73). Because Detective Bean knew that the t-shirt had possibly been tied across the face of one of the intruders as a disguise, he surmised that the intruder might have left saliva on the shirt. Accordingly, Detective Bean sent the t-shirt to the State Police Laboratory for DNA analysis. (**See id.** at 55).

Michael Gossard, a forensic scientist with the Pennsylvania State Police, testified as a serology expert. Mr. Gossard tested the t-shirt for evidence of saliva. (***See id.*** at 117). His testing indicated the presence of saliva on two different areas of the t-shirt. (***See id.*** at 121, 135).

Timothy Gavel, a forensic scientist with the Pennsylvania State Police DNA lab, performed a DNA analysis on the evidence left on the t-shirt. Mr. Gavel testified that DNA evidence left on the t-shirt belonged to Appellant []. (***See id.*** at 149, 153). He also testified that the chance of a coincidental DNA match in the African-American population was one in 7.9 quintillion. (***See id.*** at 154).

(Trial Ct. Op., at 4-6) (some record citation formatting provided).

Based on the above evidence, and our review of the record in the light most favorable to the Commonwealth as verdict winner, we conclude that it was sufficient to establish the elements of the crimes of which Appellant was convicted. ***See Taylor***, ***supra*** at 614. Appellant's sufficiency challenge does not merit relief.

Appellant also challenges the weight of the evidence to support his convictions. (***See*** Appellant's Brief, at 41-49). Appellant's issue lacks merit.

When we review a weight-of-the-evidence challenge, we do not actually examine the underlying question; instead, we examine the trial court's exercise of discretion in resolving the challenge. This type of review is necessitated by the fact that the trial judge heard and saw the evidence presented. Simply put, [o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. A new trial is warranted in this context only when the verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

Of equal importance is the precept that, "The finder of fact . . . exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence." *Commonwealth v. Sanchez*, 614 Pa. 1, 36 A.3d 24, 39 (2011) (citation omitted).

*Commonwealth v. Konias*, 136 A.3d 1014, 1022-23 (Pa. Super. 2016), *appeal denied*, 145 A.3d 724 (Pa. 2016) (most citations and quotation marks omitted).

In this case, the trial court "presided over Appellant's trial [and did] not find the jury verdict so contrary to the evidence as to shock the [c]ourt's sense of justice. Thus, [the court] specifically [found] that the verdict in this matter was not against the weight of the evidence." (Trial Ct. Op., at 6). We decline Appellant's invitation to re-weigh the evidence in this matter, and conclude that the trial court did not abuse its discretion in denying his weight of the evidence challenge. *See Konias*, *supra* at 1022-23. Appellant's weight of the evidence claim does not merit relief.

In his third issue, Appellant challenges the trial court's denial of his motion for a mistrial after the Commonwealth's attorney referenced an anonymous tip during his opening statement and during his examination of Detective Dutter. (*See* Appellant's Brief, at 55-61). This issue lacks merit.

It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based

- 8 -

is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

*Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011), *cert. denied*, 132 S. Ct. 2377 (2012) (citations and quotation marks omitted); *see also Commonwealth v. Jemison*, 98 A.3d 1254, 1263 (Pa. 2014) (observing that "the jury is presumed to follow the court's instructions.") (citation omitted).

Appellant first argues that the trial court erred in denying his motion for a mistrial where Commonwealth's counsel made a hearsay statement during his opening statement, which prejudiced him. (*See* Appellant's Brief, at 55-56). We disagree.

It has long been the law of this Commonwealth that:

> Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. [*See*] Pa.R.E. 801(c). Thus, any out of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1035 (Pa. 2012), *cert. denied*, 133 S. Ct. 1795 (2013) (case citation and internal quotation marks omitted).

In this case, during the Commonwealth's opening statement, the prosecutor explained the process by which the fingerprints on the jar were identified. Specifically, after stating that investigators had been unable to identify the fingerprints for approximately six months, the prosecutor stated:

> Now it's time for me to talk about that second lucky break that happened in January of 2013 when Detective Harold Dutter received an anonymous tip from someone who identified Dominque Lee, this [co-]defendant, as one of the men who [was] involved in the home invasion robbery.

(N.T. Trial, 11/17/14, at 18). Immediately thereafter, Appellant's counsel objected and moved for a mistrial, which the trial court denied. (**See id.**). When counsel completed his opening statement, the court instructed the jury:

> Ladies and gentlemen, before we get to the defense opening, I need to give you an instruction. You will recall that during the course of [the prosecutor's] opening[,] he made mention of what a tipster said and certain tipster information was provided to the police and there was an objection by defense. I need to give you an instruction with respect to that.
>
> When an anonymous tip comes to the police[,] the police are allowed to act on an anonymous tip. In other words, they are allowed to check fingerprints and identities and these types of things. But what the tipster said, his actual words, is not evidence of [Appellant's] guilt and you may not consider what the tipster said as being evidence of any defendant's guilt.
>
> However, the prints that were checked as a result of the tip is evidence that you may consider in this particular case. . . .

(**Id.** at 30-31).

Here, because the statement about the tipster was made to explain the course of conduct pursued by the police, not for the truth of the matter asserted, it was not hearsay. **See Johnson**, **supra** at 1035. Moreover, any prejudice allegedly suffered by Appellant was cured by the court's cautionary instruction, which the jury is presumed to have followed. **See Jemison**, **supra** at 1263; **Chamberlain**, **supra** at 422. This argument lacks merit.

- 10 -

Appellant also argues that the trial court abused its discretion when it denied counsel's motion for a mistrial on the basis of the prosecutor's questioning of Detective Dutter about the anonymous tip. (*See* Appellant's Brief, at 57-58). Appellant maintains that, because the anonymous tip led to a fingerprint identification that allowed Detective Dutter to determine that he and Dominque Lee were half-brothers, the tip was "very damning evidence" that denied Appellant the right to confrontation. (Appellant's Brief, at 58). However, this argument also fails.

A review of the testimony reveals that the Commonwealth's attorney asked Detective Dutter, "[w]hen [] Dominique's Lee's name first c[a]me up in the context of this investigation[,]" to which the detective responded, "I received an anonymous tip." (N.T. Trial, 11/18/14, at 183). Appellant's counsel objected and moved for a mistrial, which the trial court denied after cautioning the jury: "[J]ust because somebody's name comes up in an anonymous tip, it is not to be construed in any way by you as evidence against that individual. It[ is] simply being used in this context to show that the police took [a] step and went forward." (*Id.* at 183-84).

Again, we conclude that the cautionary instruction provided by the trial court was sufficient to overcome any potential prejudice. *See Chamberlain*, *supra* at 422; *see also Jemison*, *supra* at 1263. Moreover, as observed previously, the statement by the anonymous tipster was not hearsay because it was offered to show why the police took the

investigation in the direction that they did, not for the truth of the matter asserted. *See Johnson*, *supra* at 1035. Therefore, this argument fails and the trial court did not abuse its discretion when it denied Appellant's motions for a mistrial on the basis of the anonymous tip. *See Chamberlain*, *supra* at 422. Appellant's third issue lacks merit.

In his fourth issue, Appellant argues that the trial court erred in denying his motion for a mistrial where the prosecutor committed prosecutorial misconduct during his closing argument. (*See* Appellant's Brief, at 61-68). Specifically he maintains that the Commonwealth's counsel incorrectly suggested that Appellant kept the alibi defense a secret until the last day of trial and gave his opinion that Appellant was guilty. (*See id.*). Appellant's issue does not merit relief.

> With specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that [i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made. Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial.

*Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (citations and quotation marks omitted). Here, when viewing the prosecutor's comments about the alibi witnesses in context, it is clear that Appellant's argument in this regard lacks merit.

During the prosecutor's closing argument, the following exchange occurred:

[Commonwealth:] Let's talk about some other obvious issues with the alibi witnesses. None of these people who had this valuable information ever brought it to the attention of anyone except the defense lawyers. Think about this. Your loved one gets arrested on a crime such as this. And you know unequivocally, without a doubt this person could not have committed the crime. Why? Because they were with [you] at that precise moment in time.

Are you going to just sit on that information for two years, not pick up the phone, call the police [and] the County Detectives and just sit on it and let it sit there and sit there until when? The last day of trial it comes out. Does that make any sense at all?

[Additionally,] [t]wo of the four witnesses, when the police did find out they that they were alleged alibi witnesses couldn't, wouldn't talk to police. Who does that? . . .

They refused to talk to the police. Why do you think that is? Why do you think they didn't want to talk to them? You know. Because if they told the detectives what their account was and the detectives could follow-up on it, see if it holds water, attempt to corroborate. But if they don't talk to the detective and the detectives [don't] have a chance to do any of that. That is why they kept it a secret until the last day of the trial.

[Appellant's Counsel]: Objection, move for mistrial. Alibi notices were filed.

THE COURT: Objection overruled. Motion denied.

(N.T. Trial, 11/19/14, at 219-20).

Reading the prosecutor's comments in context, we conclude that he did not commit prosecutorial misconduct. *See Judy*, *supra* at 1019. He properly questioned the reliability of alibi witnesses who chose not speak to police on behalf of their loved one prior to trial, when they allegedly could have given him an alibi. (*See* N.T. Trial, 11/19/14, at 219-20). Therefore,

- 13 -

the trial court did not abuse its discretion when it denied Appellant's motion for a mistrial on this basis. *See Chamberlain*, *supra* at 422.

Additionally, Appellant's argument that the Assistant District Attorney committed prosecutorial misconduct because he gave his personal opinion about Appellant's guilt also lacks merit. (*See* Appellant's Brief, at 64-66).

> It is well established that a prosecutor must have reasonable latitude in presenting a case to the jury, and must be free to present arguments with logical force and vigor. Counsel may comment upon fair deductions and legitimate inferences from the evidence presented during the testimony. Although a prosecutor may argue to the jury that the evidence establishes the defendant's guilt, arguments from personal opinion as to the guilt of the accused are not proper.

*Chamberlain*, *supra* at 407-08 (citations and quotation marks omitted).

Here, Appellant's counsel objected to the following language by the prosecutor:

> The word verdict is from the Latin word verdictum. It means to speak the truth. That is what I am asking you to do. I'm asking you to go back to the jury room, deliberate and speak the truth.
>
> And there is only one truth in this case and it is a very simple truth. And that is that these two men, these half-brothers, these two co-conspirators, went into the house at 744 Merchant Street and committed a home invasion robbery. In the course of committing that, Dominick Williams was shot and killed.

(N.T. Trial, 11/19/14, at 212).

Reading the prosecutor's statement in light of his closing argument as a whole, it appears that he merely was commenting on "fair deductions and legitimate inferences from the evidence[.]" *Chamberlain*, *supra* at 408

(citation omitted). Moreover, even if the prosecutor's comments were considered prejudicial, we observe that:

> [N]ot every remark by the prosecutor, even assuming it is intemperate or uncalled for, requires a new trial. A prosecutor's comments do not amount to reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Moreover, the prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred. In applying these standards on appellate review, we have explained that whether this standard has been violated by the language of the prosecutor is not in the first instance an appellate court's decision to make; rather, it is the duty of the trial judge to rule upon the comments and we are limited to reviewing whether the trial court abused its discretion.

***Chamberlain***, ***supra*** at 408 (citations and quotation marks omitted).

In this case, it was for the trial court to weigh whether the prosecutor's remarks constituted reversible error. ***See id.*** The court found that they did not, but that, instead, the "prosecutor was not offering his personal opinion[, but rather] was arguing to the jury that the evidence presented established [A]ppellant's guilt." (Trial Ct. Op., at 12). We discern no abuse of discretion. ***See Chamberlain***, ***supra*** at 408.

Finally, in his fifth issue, Appellant argues that the trial court improperly interfered with trial. (***See*** Appellant's Brief, at 68-82). Specifically, he claims that "[the trial court's] interference, commenting on evidence, improper criticism and interruption of [defense counsel's] closing speeches[,] denied [Appellant] his right to due process and a fair trial and

impacted [his] Sixth Amendment right to effective counsel." (***Id.*** at 68) (underlining omitted). After exhaustively reviewing the record, we disagree.

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as [] judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune. However, [a] judge's remarks to counsel during trial do not warrant reversal unless the remarks so prejudice the jurors against the defendant that it may reasonably be said [that the remarks] deprived the defendant of a fair and impartial trial.

***Commonwealth v. Kearney***, 92 A.3d 51, 61 (Pa. Super. 2014), *appeal denied*, 101 A.3d 102 (Pa. 2014) (citation and emphases omitted).

In this case, Appellant first maintains that the trial court improperly interrupted his cross-examination of Aaron Crawford, who was in the subject house during the robbery. (***See*** Appellant's Brief, at 72-76). On direct examination, Crawford testified that the intruders who entered the home were African American individuals, and that they wore t-shirts on their heads as disguises, with one of the two individuals entering his bedroom wearing a

white t-shirt on his head, and the other wearing a black one. A third person, who did not enter the bedroom wore a white t-shirt on his head. (*See* N.T. Trial, 11/17/14, at 149, 151, 169). In response to the prosecutor's questions about what color shirts the men were wearing on their bodies, Crawford testified that the two men wearing white t-shirts on their heads were also wearing white t-shirts on their torsos, and the individual wearing a black t-shirt on his head was wearing a black t-shirt on his body. (*See id.* at 169-70). One of the individuals disguised by a white t-shirt struck Crawford in the head and stole a jar from his bedroom that contained marijuana, money, and a pack of Newport cigarettes. (*See id.* at 152, 155). Minutes later, police took Crawford to a location approximately one-and-a-half blocks from his home where he identified a jar containing a pack of Newport cigarettes as the one taken from his home. (*See id.* at 161-63). He also identified a black t-shirt located "a couple feet away" from the jar as being the one worn on the head of one of the intruders. (*Id.* at 164).

On cross-examination, the following relevant exchange occurred:

[Defense Counsel]: Now two guys come in [the bedroom], you said . . . both of them had white t-shirts on. . . .

[Crawford]: I don't know.

[Defense Counsel]: White t-shirts on their head[s] today earlier in front of the jury[?]

[Commonwealth]: Objection.

THE COURT: Sustained.

\*    \*    \*

> THE COURT:  [Defense counsel], the testimony was that one had a white t-shirt on.  He testified that the other had a black t-shirt.  There was another man outside that had a white t-shirt.

(*Id.* at 186).

After our independent review, we conclude that the trial court was responding to an objection raised by the Commonwealth, not condemning defense counsel.  The court merely was correcting the mistake in counsel's recitation of Crawford's testimony. This does not evidence any of the partiality or bias necessary to find that the trial court acted improperly.  **See Kearney**, **supra** at 61.

Next, Appellant complains that the trial court's attempt to clarify whether defense counsel was asking about the shirts worn on the assailants' faces or on their bodies, (**see** N.T. Trial, 11/17/14, at 190-91), evidenced partiality necessitating a new trial.  This issue is waived because Appellant provides only one incoherent sentence in support of it.  (**See** Appellant's Brief, at 74); **see also** Pa.R.A.P. 2101, 2119(a)-(b).   Moreover, after reviewing the entire record in this matter, we conclude that the trial court was clarifying counsel's question in an attempt to maintain the orderly presentation of this case.  **See Kearney**, **supra** at 61.  This claim would lack merit, even if not waived.

Appellant additionally maintains that the trial court improperly interfered when defense counsel was impeaching Crawford about an

allegedly inconsistent statement about a Polo insignia on the black t-shirt. (**See** Appellant's Brief, at 74-76). Specifically, Appellant attempted to bring in Crawford's grand jury testimony as an inconsistent statement where, in that statement, he had said that one of the assailant's t-shirts was black and, at trial, he testified that the shirt was black with a Polo insignia on it. (**See** N.T. Trial, 11/17/14, at 197-99). The trial court advised defense counsel that this was not a prior inconsistent statement, and suggested that he read the rules about what such a statement is. (**See id.** at 199). We find no error.

A prior inconsistent statement, in relevant part, is "[a] prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and . . . was given under oath subject to the penalty of perjury[.]" Pa.R.E. 803.1(1)(A). In other words, prior inconsistent statements are those earlier statements, taken under oath, that are incompatible with the witness's trial testimony.

For example, in **Commonwealth v. Buford**, 101 A.3d 1182 (Pa. Super. 2014), *appeal denied*, 114 A.3d 415 (Pa. 2015), this Court concluded that a trial court properly admitted a tape recorded statement in which the witness identified the defendant as the perpetrator of the subject crime as a prior inconsistent statement, where the witness recanted her prior identification, and the defendant's culpability, at trial. **See Buford**, **supra** at 1200. Similarly, in **Commonwealth v. Stays**, 70 A.3d 1256 (Pa. Super.

2013), a trial court properly admitted a prior inconsistent statement identifying the defendant and the signed photo array, where witness recanted the identification at trial. **See Stays**, **supra** at 1262. Finally, in **Commonwealth v. Pitner**, 928 A.2d 1104 (Pa. Super. 2007), *appeal denied*, 944 A.2d 757 (Pa. 2008), this Court affirmed a trial court's admission of the witness's guilty plea colloquy, which identified defendant as participating in the crime with him, as a prior inconsistent statement, where he denied defendant's involvement at trial. **See Pitner**, **supra** at 1108-09.

However, here, the prior statement merely lacked a detail that was included in Crawford's trial testimony. Therefore, the trial court properly advised Appellant that these statements were not incompatible and inconsistent in the sense required for admission as a prior inconsistent statement. **See** Pa.R.E. 803.1(1)(A); **Buford**, **supra** at 1200; **Stays**, **supra** at 1262; **Pitner**, **supra** at 1108-09. Hence, for all of these reasons, Appellant's claim that the trial court improperly interfered with his cross-examination of Crawford, lacks merit. **See Kearney**, **supra** at 61.

Finally, Appellant contends that the trial court "improperly criticized and objected to [defense counsel's] closing and misled the jury concerning [his] discussion of the burden of proof." (Appellant's Brief, at 78). This issue is waived for Appellant's failure to provide any pertinent authority in support of his argument that the trial court's interruption during his closing argument supports a finding that it acted improperly. (**See id.** at 78-81);

*see also Kearney*, *supra* at 66-67 (finding claim waived for failure to cite pertinent authority and discussion thereof). Moreover, it would not merit relief.

In *Commonwealth v. Britton*, 482 A.2d 1294 (Pa. Super. 1984), *appeal denied*, 506 A.2d 895 (Pa. 1986), similar to this case, the appellant argued that the trial court acted improperly when it interrupted him during closing argument as defense counsel was explaining the meaning of reasonable doubt. *See Britton*, *supra* at 1301. In concluding the issue had no merit, this Court observed:

> The court correctly curtailed the attorney's remarks explaining to the jury that it was his role to instruct as to the law. It is the duty of the trial judge to instruct the jury as to the applicable law, and it is not error for the judge to interrupt counsel and correct a possibly misleading statement of the law.

*Id.* (citations omitted)

Likewise, here, we conclude that the trial court was acting within its purview when it interrupted defense counsel to correct what it perceived as a misstatement of the law. *See id.* Further, the complained-of exchange, (*see* N.T. Trial, 11/19/14, at 159-61), even were we to view it as "critical or disapproving of, or even hostile to, counsel[,]" does not "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Kearney*, *supra* at 61 (citations omitted). Hence, Appellant's argument in this regard lacks merit. Therefore, after our review of the entire record, we conclude that there is nothing in any of the trial court's remarks to

- 21 -

Appellant's counsel that rises to the level of requiring a new trial. ***See id.***

Appellant's fifth issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/2016