J-A11037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MARKIST KAREEM MOORE | : | |
| | : | |
| Appellant | : | No. 1396 MDA 2017 |

Appeal from the Judgment of Sentence July 18, 2016
in the Court of Common Pleas of Northumberland County
Criminal Division at Nos.:  CP-49-CR-0000808-2015
CP-49-CR-0000819-2015

BEFORE:   STABILE, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                           **FILED JULY 20, 2018**

Appellant, Markist Kareem Moore, appeals from the judgment of sentence imposed following his conviction of one count of possession with intent to deliver a controlled substance (PWID), and two counts each of possession of a controlled substance and possession of drug paraphernalia.[1] We affirm.

We take the following facts and procedural history from our independent review of the certified record.  On June 22, 2015, Corporal Brian Primerano, a City of Shamokin police officer, met with Curtis Groom, a known drug user, as an informant, to conduct a controlled buy.  (**See** N.T. Trial, 4/21/16, at 27-

---

[1] 35 P.S. §§ 780-113(a)(30), (16), and (32), respectively.

---

*   Retired Senior Judge assigned to the Superior Court.

30). After searching him and supplying him with ten dollars in buy money, the officer and his partner, Officer Jarret Scandle, drove Groom to Appellant's residence in an unmarked vehicle. (*See id.* at 30-31). Officer Primerano began videotaping Groom as he approached Appellant's house and witnessed Appellant's girlfriend, Jaleesa Bickert, allow him inside. (*See id.* at 31). He and Officer Scandle surveilled and videotaped the house for approximately forty-five minutes, from 9:46 p.m. until 10:28 p.m., waiting for Groom to return to their vehicle. (*See id.*). However, at 10:28 p.m., the officers videotaped Groom and Appellant exit the house, and get into Appellant's car. (*See id.* at 31-32). The officers assumed that Appellant was driving Groom home, so they drove to the informant's residence, and parked in front of it. (*See id.* at 32, 41-42). They did not see that Appellant dropped Groom off approximately one block away from the home. Officer Primero testified that Groom did not enter or exit his home during the roughly one or two minutes the officers sat in front of the residence. (*See id.* at 32).

They immediately retraced their steps back to Appellant's house, and then drove the few blocks to the police station, where they met Groom, who had walked the approximately seven or eight blocks from where Appellant had dropped him. (*See id.* at 33). At the station, Groom turned over a packet of what they believed to be spice (synthetic marijuana), which he stated he had purchased from Appellant. (*See id.* at 33, 42). The police did not see anybody on the streets that night. (*See id.* at 42). The jury viewed a DVD

of the videotapes taken by Officer Primerano, and the Commonwealth admitted it into evidence. (**See id.** at 36-41).

At trial,[2] Groom testified consistently with Officer Primerano that the officers searched him, gave him buy money, and took him to Appellant's home to obtain the spice, which he did. (**See id.** at 160-64). After the purchase, Appellant gave Groom a ride home. (**See id.** at 166). Groom testified that, after exiting Appellant's car, he immediately walked directly to the police station, talking to no one and stopping nowhere else on the way. (**See id.** at 167). Once there, he gave Officers Primero and Scandle the spice. (**See id.**).

On June 25, 2015, Officer Primerano executed a search warrant at Appellant's residence. (**See id.** at 51-52). He found "a metal smoking pipe" and a packet of spice, labeled "Space," in the bedroom. (**Id.** at 54; **see id.** at 53-55). The officers also found empty packets in the living room and attic.

_____

[2] Although Appellant does not raise it as an issue, for the sake of completeness, we mention that Appellant appeared *pro se* in the trial court. On November 6, 2015, the trial court acknowledged Appellant's choice to appear *pro se* and appointed stand-by counsel to attend all proceedings, and to be available to assist him "by answering questions, offering advice on trial tactics, and advice on methods of proceeding." (Order, 11/06/15, at 1). On April 12, 2016, approximately one-week before trial, Appellant filed a waiver of counsel that the court approved after finding Appellant "made a knowing, voluntary and intelligent waiver of his/her rights to [c]ounsel." (Waiver of Counsel, 4/12/16). Standby counsel, Edward Greco, Esquire, appeared at all proceedings in the trial court, through sentencing, and Appellant represented himself *pro se*. Newly appointed counsel, Richard R. Feudale, Esquire, filed Appellant's amended post-sentence motion, and represents Appellant in this appeal.

(*See id.* at 60-61). Forensic scientist Christina Fialkowski testified that the substance found during the search of Appellant's home contained chemical MM2201, also popularly referred to as spice, a Schedule I controlled substance pursuant to The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act), 35 P.S. §§ 780-101 - 780-144. (*See id.* at 129, 131). Similarly, forensic scientist Dana Jackson testified that she tested the material purchased by Groom, and that her results showed that the substance contained a Schedule I synthetic cannabinoid. (*See id.* at 144).

Appellant's girlfriend, Jaleesa Bickert, testified on Appellant's behalf. (*See id.* at 194). She stated that the spice and pipe found in the house belonged to her. (*See id.* at 195). Appellant exercised his right not to testify. (*See id.* at 202).

On April 21, 2016, the jury convicted Appellant of the previously mentioned charges. On July 18, 2016,[3] the court sentenced Appellant to an aggregate term of not less than fifteen nor more than thirty-six months' incarceration, plus costs and fines, with credit for time-served. (*See* N.T. Sentencing, 7/18/16, at 12-13). On June 13, 2017, after multiple continuances, the court granted Appellant's post-sentence motions in part, and denied them in part. Specifically, the court found that PWID and one

---

[3] The court imposed Appellant's sentence in open court on July 18, 2016. It filed the sentence on July 22, 2016.

count of possession should have merged for sentencing purposes. It denied post-sentence relief in all other respects. On August 1, 2017, the court vacated Appellant's sentence for possession, resulting in an aggregate term of imprisonment of not less than twelve nor more twenty-four months' incarceration. Appellant timely appealed.[4]

Appellant raises five questions for this Court's review.

I. Since "spice" is not specifically listed as a controlled substance[,] was it improper to charge Appellant for delivery of the same or to use that term in the charging documents and should verdicts stemming from an arrest that did not comport with the [R]ules of [C]riminal [P]rocedure and verdicts so obtained result in a violation of due process warranting reversal?

II. Did the improper charge and use of the term that the substance was a narcotic improperly inflame and prejudice the jury such that a new trial is warranted?

III. Did the Commonwealth violate **Brady v. Maryland**, 373 U.S. 83 (1963) in failing to provide in discovery or at trial the alleged packaging material or a complete photograph thereof which [A]ppellant contends would reveal a statement on the package advising that the contents thereof were not prohibited by law and did such violation result in the improper suppression of admissible, exculpatory evidence relevant to the state of mind of [Appellant] such that the omission of same deprived Appellant of a fair trial warranting reversal?

IV. Did the verdicts of the jury lack the support of the weight of the evidence, thereby warranting a new trial including but not limited to improper, inflammatory references to narcotics to the jury, the lack of a good chain of custody on the alleged controlled

_____

[4] On September 20, 2017, Appellant filed a timely statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). The court filed a statement in lieu of formal opinion on November 1, 2017, and relied, in part, on the reasons stated in its June 13, 2017 decision on Appellant's post-sentence motions. **See** Pa.R.A.P. 1925(a).

substance(s), loss of surveillance on the [] [i]nformant, the lack of credibility of the [informant], the failure of the police to arrest at a time when the 'buy' money could have been preserved, the testimony of Ms. Bickert accepting responsibility for the items of issue found in the home and failure to enter a complete rendition of the packaging material in evidence?

V.      Was the evidence presented insufficient to convict beyond a reasonable doubt warranting a new trial including but not limited to improper, inflammatory references to narcotics to the jury, the lack of a good chain of custody on the alleged controlled substance(s), loss of surveillance on the [] [i]nformant, the lack of credibility of the [informant], the failure of the police to arrest at a time when the 'buy' money could have been preserved, the testimony of Ms. Bickert accepting responsibility for the items of issue found in the home and the failure to enter a complete rendition of the packaging material in evidence?

(Appellant's Brief, at 3).

In his first two issues, Appellant maintains that his arrest and conviction for possessing and selling spice were improper where the Drug Act does not identify spice as a controlled substance, and the Commonwealth's improper reference to narcotics at trial inflamed the jury. (***See id.*** at 9-16). Specifically, he claims that use of the term, spice, to identify the controlled substance for which he was charged was insufficient to apprise him of the nature of the charges against him. (***See id.*** at 9). He also argues that "[t]he use of the term 'narcotics' in his jury trial was inaccurate and its use . . . rung a bell that could not be un-rung[.]" (***Id.*** at 13). These issues are waived and would not merit relief.

It is well-settled that "'[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.' Pa.R.A.P. 302(a).

Moreover, [a] party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order." ***Commonwealth v. Watson***, 835 A.2d 786, 791 (Pa. Super. 2003) (case citations and some internal quotation marks omitted).

In the case *sub judice*, Appellant did not challenge either the charging documents or the Commonwealth's reference to narcotics at trial. In fact, the citations that Appellant provides support that conclusion. (***See*** Appellant's Brief, at 13-14) (citing N.T. Trial, 4/21/16, at 20-22, 56, 127). Additionally, our review of the portions of the trial transcript that Appellant cites, shows that the use of the word, narcotic, was in no way prejudicial.[5] Therefore, he failed to preserve his first and second issues for our review, and they are waived. ***See Watson***, ***supra*** at 791.[6]

_____

[5] At the pre-sentence hearing, Appellant stated that he did not give Groom a narcotic. (***See*** N.T. Hearing, 2/01/16, at 15). However, this is not an objection to the word, narcotic, but a statement by a defendant.

[6] For sake of completeness, we additionally observe that Appellant's second issue is waived because he fails to provide pertinent law and discussion thereof to support his claim that the prosecution committed misconduct by allowing use of the word, narcotic, at trial. (***See*** Appellant's Brief, at 12-15); ***see also*** Pa.R.A.P. 2119(a)-(b). Additionally, we note that neither issue one nor two would merit relief.

The information and the criminal complaint put Appellant on notice of what crime he was being charged with committing, whatever term the document used to describe the illegal drug. ***See Commonwealth v. Soboleski***, 617 A.2d 1309, 1312 (Pa. Super. 1992), *appeal denied*, 634 A.2d 224 (Pa. 1993) ("The purpose of the information or citation is to inform the accused of the crimes charged-to give sufficient notice of the charges so as to

In his third issue, Appellant argues that the Commonwealth committed a ***Brady*** violation by not producing "complete[,] front and back, pictures of the package[s]" of spice. (Appellant's Brief, at 17) (emphasis omitted). He maintains that, had the Commonwealth provided him with such photographs, the outcome of the proceeding would have been different because they would have shown that the packets contained statements such as, "legal for sale." (***Id.*** at 17; ***see id.*** at 17-19). This issue does not merit relief.

With respect to whether ***Brady*** applies to a particular factual scenario, the standard of review is *de novo,* because it is a question of law.

> [T]he United States Supreme Court in ***Brady*** held that due process is violated when the prosecution withholds evidence

_____

provide him or her with the opportunity to prepare a defense, and to define the issues for trial.") (citations omitted). Further:

> a defendant is not entitled to relief for a claim of prosecutorial misconduct unless the unavoidable effect of the prosecutor's actions is to so prejudice the jury that a true verdict cannot be rendered because the existence of bias and hostility generated by the conduct makes it impossible to weigh the evidence in a neutral manner.

***Commonwealth v. Gease***, 696 A.2d 130, 134 (Pa. 1997), *cert. denied*, 522 U.S. 935 (1997). Here, Appellant provides absolutely no evidence that use of the word, narcotic, so prejudiced him that he is entitled to a new trial. The citations he provides generally refer to narcotics, but it is difficult to see how this would prejudice Appellant. (***See*** Appellant's Brief, at 13-14) (citing N.T. Trial, at 20-22, 56, 127) (Counsel asking officer how long he has been working in narcotics investigation; Officer Primerano describing classes he attended, including narcotics investigation and professional decision making in narcotics investigations, and testifying that he participated in hundreds of narcotics investigations; Counsel asking if officer recognized spice based on his training and experience in narcotics; forensic scientist Christina Fialkowski testifying she has performed between 7,000 to 8,000 narcotics analyses).

favorable to a defendant. Impeachment evidence, as well as exculpatory evidence, falls within the ***Brady*** rule.

To establish a violation of ***Brady***, a defendant is required to demonstrate: (1) evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. Conversely, [t]he mere possibility that an item of undisclosed information **might** have helped the defense, or **might** have affected the outcome of the trial **does not establish materiality** in the constitutional sense. In determining whether a reasonable probability of a different outcome has been established, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. Thus, a reasonable probability of a different result is established when the government's suppression of evidence undermines confidence in the outcome of the trial. . . . In engaging in this analysis, a reviewing court is not to review the undisclosed evidence in isolation, but, rather, the omission is to be evaluated in the context of the entire record.

***Commonwealth v. Dennis***, 17 A.3d 297, 308 (Pa. 2011) (citations and quotation marks omitted; emphases added).

Here, in his amended post-sentence motion, Appellant argued:

31. [Appellant] complains that he did not receive complete pictures of the alleged packet of suspected spice.

32. He believes this **may** have been material to his case because such packets **may contain** statements such as "legal for sale" or "does not contain illegal materials" and the failure to do so was prejudicial to his due process right warranting acquittal as [a] remedy.

33. This issue of the failure to provide complete front and back pictures of the package and product description is critically important because **if** the product was misbranded, then it would have been vitally material to a consideration of the *mens rea* or state of mind of [Appellant].

(Amended Post Sentence Motion, 3/24/17, at unnumbered page 7 ¶¶ 31-33) (emphases added).

Appellant's allegations that the complete pictures of the packets of spice found in his home "may contain" certain statements or "may" have been material to his case do not establish the constitutional materiality required for a **Brady** violation. **See Dennis**, **supra** at 308. Moreover, reviewing this purported evidence in light of the entire record, not only was it immaterial, but its absence does not undermine "confidence in the outcome of the trial" where there was testimony and videotape evidence support a finding that Appellant sold spice to Groom. **Id.** (citation omitted).[7] Appellant's third issue does not merit relief.

In Appellant's fourth and fifth issues, he argues that the evidence was insufficient and that his conviction was against the weight of the evidence. (**See** Appellant's Brief, at 19-24). He argues, "there is not credible testimony or other evidence of such weight as to satisfy the burden of proof[.]" (**Id.** at 19). More specifically, he claims that, because the police briefly lost sight of

---

[7] Nor is Appellant's *mens rea* argument legally persuasive. The Drug Act does not only prohibit the knowing possession and delivery of **illegal** drugs, but the knowing delivery and possession of **controlled substances without being registered** to do so. **See** 35 P.S. §§ 780-113(a)(16), (30). Therefore, whether Appellant could have thought that spice was legal based on what the package might have said is irrelevant where Appellant was not registered to sell a controlled substance.

Groom, the Commonwealth could not establish Appellant delivered the spice to him, and that it failed to prove he constructively possessed the drugs and paraphernalia found in his home where Jaleesa Bickert testified they were hers.[8] (*See id.* at 23). Appellant's claims lack merit.

> When we review a weight-of-the-evidence challenge, we do not actually examine the underlying question; instead, we examine the trial court's exercise of discretion in resolving the challenge. This type of review is necessitated by the fact that the trial judge heard and saw the evidence presented. Simply put, [o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. A new trial is warranted in this context only when the verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.
>
> Of equal importance is the precept that, [t]he finder of fact . . . exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence.

**Commonwealth v. Rayner**, 153 A.3d 1049, 1056 (Pa. Super. 2016), *appeal denied*, 169 A.3d 1046 (Pa. 2017), *cert. denied*, 138 S.Ct. 976 (2018) (citations and quotation marks omitted).

---

[8] Appellant's arguments go to the weight of the evidence only, *i.e.*, he claims that the jury should have weighed the surveillance and Bickert's testimony differently. (*See* Appellant's Brief, at 23). Therefore, he has waived any sufficiency claim on this basis. He also has waived his sufficiency issue by failing to identify in his Rule 1925(b) statement "the element or elements upon which [he] alleges that the evidence was insufficient." **Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013) (citation omitted); (**see also** Appellant's Rule 1925(b) Statement, 9/20/17, at 1).

The standard we apply in reviewing sufficiency of the evidence is whether in viewing all the evidence admitted at trial in light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. Any doubts concerning an appellant's guilt are to be resolved by the trier of fact unless the evidence was so weak and inconclusive that no probability of fact could be drawn therefrom. The trier of fact while passing upon credibility of witnesses . . . is free to believe all, part or none of the evidence. Additionally, [t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Garland*, *supra* at 344-45 (citations and quotation marks omitted).

Instantly, the Commonwealth charged Appellant with possession of a controlled substance by a person not registered, possession of paraphernalia, and PWID. (*See* Information, 8/31/15). Therefore, under the facts of this case, it was required to prove that Appellant possessed spice and drug paraphernalia, and that he intended to deliver spice to Groom. *See* 35 P.S. §§ 780-113(a)(16), (30), (32).

In addressing Appellant's post-trial motions, the trial court found:

[Appellant] . . . relies upon his contention that the verdict does not rest upon disinterested third party witness testimony; however, the circumstances of the controlled buy comport with the witnesses' testimony.

At trial, there was extensive testimony by Corporal Brian Primerano as to the use of an informant to perform a controlled buy of drugs from [Appellant]. The Commonwealth showed a number of videos which recorded the informant going into [Appellant's] residence, exiting the residence with [Appellant] and the two of them getting into [Appellant's] car on the night of June 22, 2015. The informant also testified that he performed a controlled buy and bought $10 of spice from [Appellant] on June 22, 2015. Further testimony by police detailed a subsequent

search of [Appellant's] residence whereby a glass pipe, a packet of [s]pice, and two empty packets of spice were recovered.

Jaleesa Bickert, [Appellant's] girlfriend and mother to his children, testified on behalf of [Appellant]. She stated the glass pipe and packet of spice belonged to her. The jury considered and ultimately rejected her testimony. Th[e] court did not find the jury's verdict to be so contrary to the evidence as to shock one's sense of justice.

(Trial Court Opinion, 6/13/17, at unnumbered page 3).

Based on the foregoing, we discern no abuse of discretion and we decline Appellant's invitation to re-weigh the evidence. *See Rayner*, *supra* at 1056. Appellant's weight of the evidence claim does not merit relief. Additionally, viewing the above evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude that it establishes that Appellant delivered spice to Groom, and that he possessed the drug and paraphernalia in his home. Therefore, the evidence was sufficient to support Appellant's conviction, and any sufficiency claim would not merit relief. *See Garland*, *supra* at 344-45. Appellant's fourth and fifth issues lack merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/20/2018

- 13 -