J-S40026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRAHIM SMITH | : | |
| | : | |
| Appellant | : | No. 1028 EDA 2017 |

Appeal from the Judgment of Sentence February 2, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.:  CP-51-CR-0006922-2014

BEFORE:   LAZARUS, J., DUBOW, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 28, 2018**

Appellant, Brahim Smith, appeals from the judgment of sentence imposed following his conviction of firearms not to be carried without a license and persons not to possess firearms.[1]  We affirm.

The trial court aptly set forth the factual history of this case as follows:

On April 21, 2014, at approximately 1:10pm, Officers Alberto Ortiz and his partner, Michael Edwards, received a radio call for a crime in progress in the area of 12th Street and Glenwood Avenue, in Philadelphia.  They arrived on the scene within two minutes of the radio call.  The flash description provided over police radio was of a black male, wearing a black hat, black polo shirt, and tan cargo pants.  When Officers Ortiz and Edwards arrived, Sergeant Michael Soto and his partner, Police Officer Sylvester White, were already on location also in response to the radio call for a crime in progress.  While on location speaking to the [c]omplainant[,] Sergeant Soto observed a pair of feet hanging out of the passenger side of a green minivan that was

_____

[1] 18 Pa.C.S.A. §§ 6106 and 6105(c)(1), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

parked on 12th Street approximately halfway down the block from him. Within seconds of their arrival, Sergeant Soto, Officer White, and the complainant directed Officers Ortiz and Edwards to this green minivan. Police Officers Ortiz and Edwards were told [Appellant] was sitting in the van and matched the flash information.

As a result of this information, Officers Ortiz and Edwards pulled up to the van in their patrol car. Officer Ortiz observed [Appellant] sitting on the floor in the rear sliding door well of the passenger side of the van with his feet hanging onto the sidewalk[.] He also saw that [Appellant] was the only person inside of the van. As Officer Ortiz exited his vehicle and approached the van, [Appellant] immediately stood up from where he was sitting on the floor of the van and walked toward the officer. [Appellant] was stopped in front of the van and a frisk of his person was conducted. [Appellant's] clothing did indeed match the flash description from the radio call. Only three minutes passed from the time Sargent Soto first observed [Appellant's] feet sticking out of the sliding door to when Officers Ortiz and Edwards approached the van. During this time, Sergeant Soto saw no other individuals walk up to or exit the van. Officer Edwards testified that he was parking his vehicle when Officer Ortiz initially stopped [Appellant] for investigation. He also testified that [Appellant] was the only person who he saw standing in front of and next to the van.

Officers Brittany Kelly and Alicea[2] arrived at 12th Street and Glenwood Avenue approximately five minutes after Officers Ortiz and Edwards. They too had received the identical flash information as the other officers. As Officer Kelly approached the open van door, she saw Officer Ortiz speaking with [Appellant] outside the vehicle. As Officer Kelly stood next to the van, she looked into the vehicle and saw a firearm. From her position, she observed that the firearm was in a cardboard box located in the interior of the vehicle. The box was between the second and third rows and was approximately one foot away from the van door. Further, the lid to that box was open. The box was approximately two inches high and twelve inches long with auto parts in it. Nothing in the box covered the weapon or obstructed the officer's view of it. Police Officer Kelly alerted Officer Ortiz of her finding.

_____

[2] Officer Alicea's first name is not included in the record.

Officer Kelly then held the scene. The firearm was observed until Officer Ortiz returned to the minivan approximately thirty minutes later. During that time, no one approached or acquired access to the van, nor did any person move the gun. Police Officer Ortiz testified that the box containing the gun was within arm's reach of where he initially observed [Appellant] sitting in the van. The firearm was eventually recovered and placed on Philadelphia Police Department property receipt 3141781. It was later determined to be a Bryco Arms 38 automatic silver and black handgun, with one live round in the chamber and six rounds in the magazine.

(Trial Court Opinion, 10/05/17, at 1-4) (record citations and footnotes omitted).

Appellant proceeded to a bifurcated trial on October 12, 2016. During trial, the Commonwealth twice mistakenly played a portion of a recorded prison phone call between Appellant and a female who was not identified for the jury, in which the female states: "You never slip up like that[.]" (N.T. Trial, 10/12/16, at 13; **see** Trial Ct. Op., at 4).[3] The court sustained defense counsel's objection, and instructed the jurors "to disregard the last portion of the conversation that was just played by the Commonwealth. You are not to consider it in your deliberations at all. That will be stricken from the record." (N.T. Trial, 10/12/16, at 147; **see id.** at 148). Defense counsel moved for a mistrial, arguing that the statement was prejudicial, and implied that Appellant was involved in prior criminal activity that "he has gotten away

_____

[3] The court had excluded this portion of the call from evidence. However, the court permitted the sentence on the call immediately before this statement to come into evidence, and it was difficult to isolate the statements. (**See** N.T. Trial, 10/12/16, at 13-14, 149; Trial Ct. Op., at 4, 9).

- 3 -

with." (*Id.* at 150). The court denied the motion, explaining that although it had precluded the statement, the statement itself was subject to multiple interpretations. (*See id.* at 152-53). The court had instructed the jury to disregard it, and also advised defense counsel that it was willing to issue another curative instruction to the jury in the final charge, but counsel declined, electing not to bring attention to the statement. (*See id.*).

On October 14, 2016, the jury found Appellant guilty of firearms not to be carried without a license, and the trial court found him guilty of persons not to possess firearms.[4] On February 2, 2017, the court sentenced Appellant to an aggregate term of not less than three nor more than six years' incarceration, followed by four years of probation. It denied Appellant's timely post-sentence motion on February 17, 2017. This timely appeal followed.[5]

Appellant raises two questions for our review:

> 1. Did not the court err in denying Appellant's motion for a mistrial where the prosecutor, several times, played to the jury a highly prejudicial portion of prison tapes containing a statement by a non-testifying declarant, to wit: "You never slip up like that," by a non-testifying declarant [sic], that had previously been excluded by the court after a pre-trial hearing?

---

[4] Relevant to this appeal, the parties stipulated at trial that, at the time of his offense on April 21, 2014, Appellant had an active bench warrant for a probation violation. (*See* Trial Ct. Op., at 5-6, 11-12; *see also* N.T. Trial, 10/14/16, at 20-22).

[5] Appellant timely filed a concise statement of errors complained of on appeal on May 18, 2017. The trial court entered an opinion on October 5, 2017. *See* Pa.R.A.P. 1925.

2. Was not the evidence insufficient to convict Appellant for violating 18 Pa.C.S.A. § 6105 because he was specifically convicted under § 6105 (c), and the Commonwealth failed to prove that he was a "fugitive from justice" as that term is meant in § 6105(c)?

(Appellant's Brief, at 4).

Appellant first challenges the trial court's denial of his motion for a mistrial, made after the prosecutor inadvertently played a portion of a recorded prison phone call that the court had previously excluded from evidence. (**See id.** at 11-14; **see also** this Memorandum, **supra** at *3; N.T. Trial, 10/12/16, at 13-14, 147; Trial Ct. Op., at 4). This issue lacks merit.

> It is well–settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.
>
> **See Commonwealth v. Jemison**, 98 A.3d 1254, 1263 (Pa. 2014) (observing that "the jury is presumed to follow the court's instructions.") (citation omitted).

**Commonwealth v. Rayner**, 153 A.3d 1049, 1056-57 (Pa. Super. 2016), *appeal denied*, 169 A.3d 1046 (Pa. 2017), *cert. denied sub nom.* **Rayner v.**

***Pennsylvania***, 138 S.Ct. 976 (2018) (one citation omitted; citation formatting provided).

Here, as discussed above, the trial court sustained defense counsel's objection to the playing of the portion of the phone call, and instructed the jury not to consider the statement at all in its deliberations. After review, we conclude that the cautionary instruction provided by the trial court was sufficient to overcome any potential prejudice caused by the Commonwealth's inadvertent playing of the ambiguous statement. ***See Rayner***, ***supra*** at 1056-57. Therefore, the court did not abuse its discretion in denying Appellant's motion for a mistrial. ***See id.*** Appellant's first issue merits no relief.

Appellant next challenges the sufficiency of the evidence supporting his conviction of persons not to possess firearms. (***See*** Appellant's Brief, at 14-17). He maintains that the Commonwealth failed to prove that he was a "fugitive from justice" as required for conviction under section 6105(c)(1), where the outstanding warrant was for a probation violation. (***Id.*** at 14-15; ***see id.*** at 17; ***see also*** this Memorandum ***supra***, at *4 n.4). We disagree.

When reviewing sufficiency claims:

> Our standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to enable the fact[-]finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.

In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. . . . Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Crosley***, 180 A.3d 761, 767 (Pa. Super. 2018) (citations and quotation marks omitted).

Here, Appellant was found guilty of section 6105(c)(1), which provides, in pertinent part:

**(a) Offense defined**.—

(1) A person . . . whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

\* \* \*

**(c) Other persons**.—In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):

(1) A person who is a fugitive from justice. This paragraph does not apply to an individual whose fugitive status is based upon a nonmoving or moving summary offense under Title 75 (relating to vehicles).

18 Pa.C.S.A. § 6105(a)(1), (c)(1).

Thus, as the trial court and the Commonwealth point out, the statute specifically carves out from fugitive status only those individuals charged with summary traffic offenses. (**See** Trial Ct. Op., at 12; Commonwealth's Brief, at 23). It is undisputed that, at the time of his offense in this case, Appellant had an outstanding bench warrant for a probation violation in a separate matter. (**See** this Memorandum, **supra**, at *4 n.4). Under these circumstances, we agree with the trial court's conclusion that "[Appellant] who had a violation of probation that led to a bench warrant being issued by his supervising judge was a fugitive from justice." (Trial Ct. Op., at 12).[6] Therefore, Appellant's sufficiency claim merits no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/18

---

[6] We note that we find Appellant's discussion of the phrase "fugitive from justice" as used in caselaw and statutory authority relating to extradition legally unpersuasive, because this case does not involve extradition. (**See** Appellant's Brief, at 16). We further note that Black's Law Dictionary defines the term "fugitive" broadly, in pertinent part as: "A criminal suspect . . . in a criminal case who flees, evades, or escapes arrest[.]" Black's Law Dictionary (10th ed. 2014).