J-S59005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DESMOND JANQDHARI, | : | |
| | : | |
| Appellant | : | No. 2762 EDA 2018 |

Appeal from the Judgment of Sentence Entered April 11, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003047-2014

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.: **FILED DECEMBER 30, 2019**

Desmond Janqdhari appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury convicted him of aggravated assault,[1] robbery,[2] possession of a firearm by a prohibited person,[3] carrying a firearm without a license,[4] possessing instruments of

---

[1] 18 Pa.C.S.A. § 2702.

[2] 18 Pa.C.S.A. § 3701.

[3] 18 Pa.C.S.A. § 6105.

[4] 18 Pa.C.S.A. § 6106.

crime,[5] conspiracy,[6] and attempted aggravated assault.[7]  Upon careful review, we affirm.

On January 11, 2014, Sean Goldman and his then-girlfriend Tia White stood outside an apartment building located at 4908 Germantown Avenue in Philadelphia, Pennsylvania.  Goldman's friend Keith Williams drove up in a red Toyota Corolla along with Janqdhari, whom Goldman had never previously met.  Williams briefly spoke with Goldman, then drove off with Janqdhari.

Approximately fifteen minutes later, Janqdhari returned to 4908 Germantown Avenue and asked Goldman for drugs.  When Goldman told Janqdhari he did not have any, Janqdhari demanded money.  Goldman did not comply.  Janqdhari responded by firing two shots from a handgun, one of which hit Goldman in the abdomen.  Goldman's friend Justin[8] returned fire, striking Janqdhari several times.  Janqdhari dropped his gun and fled.

Police quickly arrived at the scene of the shooting.  Goldman described the wounded shooter and the red Toyota—information which the police promptly relayed over the radio.  Subsequently, Officer Masiejczyk[9] alerted his fellow officers to Williams' and Janqdhari's arrival at Einstein Hospital,

---

[5] 18 Pa.C.S.A. § 907.

[6] 18 Pa.C.S.A. § 903.

[7] 18 Pa.C.S.A. § 901.

[8] Justin was identified at trial solely by his first name.

[9] Officer Masiejczyk was identified at trial solely by his last name.

where the two had crashed the red Toyota. Janqdhari exited the car and entered the emergency room. Williams attempted to enter the hospital through a locked door. Subsequently, Officer Masiejczyk observed Williams make a throwing motion and flee. Officer Masiejczyk, joined by fellow officers, pursued Williams and apprehended him on a nearby porch. Police recovered a .38 caliber revolver near where Williams made a throwing motion and a makeshift silencer near the Toyota. Subsequent testing matched DNA found on the revolver to Janqdhari.

Meanwhile, officers took Goldman to Einstein Hospital. While being interviewed by the police on a gurney, Goldman realized Janqdhari lay in the bed next to him. Later, after being read his rights, Janqdhari admitted the following to police: (1) on January 6, 2014, he and Williams carjacked a woman, took her red Toyota, and switched the license plate with that of another vehicle; (2) he and Williams planned to rob Goldman because they believed he had money and drugs; (3) he originally possessed the .38 caliber revolver, but swapped guns with Williams before robbing Goldman because they believed the .40 caliber handgun to be more intimidating; (4) he was shot in the process of robbing Goldman; and (5) he and Williams had used the same guns and the red Toyota to rob a cell phone store hours before attempting to rob Goldman.

At trial, Detective Stephen Grace read into evidence Janqdhari's above-mentioned admissions. Detective Grace further recounted searching the red Toyota, confirming it had a different vehicle's license plate and contained a T-

- 3 -

Mobile bag. He also recounted investigating the January 11, 2014 cell phone store robbery. Detective Grace viewed video footage of the robbery, in which Janqdhari and Williams arrived in the red Toyota, wearing the same clothing in which they were later apprehended. Janqdhari later took the stand in his own defense and disputed nearly every aspect of his statement to the police, save for admitting to visiting the apartment complex, seeing Goldman and White, and formerly possessing the .38-caliber revolver.

Following trial, a jury found Janqdhari guilty of the above-mentioned crimes. On April 11, 2018, the court sentenced Janqdhari to an aggregate twenty-five to fifty years' incarceration, set to run consecutively to a forty-year federal sentence Janqdhari is currently serving.[10] Janqdhari timely filed post-sentence motions on April 18, 2018. Janqdhari filed a premature *pro se* notice of appeal on April 20, 2018. On September 20, 2018, the court denied Janqdhari's post-trial motions and counsel timely filed a notice of appeal. Janqdhari timely filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Janqdhari raises the following issues for our review:

1. Whether the trial court abused its discretion and committed reversible error when the court permitted the prosecutor to introduce evidence of prior bad acts.

---

[10] The United States District Court for the Eastern District of Pennsylvania imposed a 40-year sentence for the armed robbery and carjacking described *supra*.

2. Whether the trial court abused its discretion and committed reversible error when the court permitted an eyewitness to make an in[-]court identification of . . . Janqdhari, despite the fact that the witness had not participated in a pretrial identification procedure.

3. Whether the trial court abused its discretion and committed reversible error when the court permitted the complainant to testify about the contents of an out-of-court statement to police.

4. Whether the trial court abused its discretion when the court permitted the Commonwealth to present an opinion, which was based upon specialized knowledge beyond that possessed by the average layperson, through a witness[] who had not been qualified as an expert.

5. Whether the Trial Court abused its discretion and committed reversible error when the court denied . . . Janqdhari's post-sentence motion for a new trial, ruling that the verdict was not against the weight of the evidence.

6. Whether the trial court abused its discretion when the court imposed [consecutive sentences,] which resulted in a de facto life sentence.

Brief of Appellant, at 14–15.

Janqdhari's first four claims concern the court's decisions to admit or exclude evidence. *Id.* at 34. Consequently, we evaluate those claims under the following, well-established standard:

When reviewing questions regarding the admissibility of evidence, our standard of review maintains the admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record. The comment to Rule 403 of the Pennsylvania Rules of Evidence defines "unfair prejudice" as "a tendency to suggest

- 5 -

decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially."

***Commonwealth v. Seilhamer***, 862 A.2d 1263, 1270 (Pa. Super. 2004) (citations omitted).

In his first claim, Janqdhari argues the trial court abused its discretion by admitting evidence of the January 6, 2014 carjacking and the January 11, 2014 cell phone store robbery as *res gestae* evidence under Pa.R.E. 404(b)(2). ***See*** Brief of Appellant, at 27–28.

Rule 404 provides, in relevant part, as follows:

**Rule 404. Character Evidence; Crimes or Other Acts**

. . . .

(b) Crimes, Wrongs or Other Acts.

> *(1) Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)–(2).

"Our Supreme Court has consistently recognized the admission of distinct crimes may be proper where it is part of the history or natural development of the case, i.e., the *res gestae* exception." ***Commonwealth v. Brown***, 52 A.3d 320, 326 (Pa. Super. 2012).

- 6 -

Evidence of distinct crimes are not admissible against a defendant being prosecuted for another crime solely to show his bad character and his propensity for committing criminal acts. However, evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character[. One such] special circumstance where evidence of other crimes may be relevant and admissible is where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts. This special circumstance, sometimes referred to as the *res gestae* exception to the general proscription against evidence of other crimes, is also known as the complete story rationale, i.e., evidence of other criminal acts is admissible to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.

*Commonwealth v. Lark*, 543 A.2d 491, 496–97 (Pa. 1988) (internal citations omitted).

"Where the *res gestae* exception is applicable, the trial court must balance the probative value of such evidence against its prejudicial impact." *Commonwealth v. Brown*, 52 A.3d 320, 326 (Pa. Super. 2012). In conducting this balancing test, we have previously stated as follows:

[C]ourts must consider factors such as the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and "the degree to which the evidence probably will rouse the jury to overmastering hostility." McCormick, *Evidence* § 190 at 811 (4th ed. 1992)[; *see*] *also Commonwealth v. Frank*, [] 577 A.2d 609 ([Pa. Super.] 1990) (enumerating balancing test factors, *including ability for limiting instruction to reduce prejudice*).

*Id.* at 326–27 (emphasis added); *compare Commonwealth v. Robinson*, 864 A.2d 460, 497 (Pa. 2004) (affirming court's decision to admit testimony

- 7 -

concerning uncharged sexual assault during murder trial as *res gestae* because it "was not offered merely to indicate [Appellant's] propensity to commit similar crimes . . . but to show he committed these crimes charged, how he committed them, why he committed them and the circumstances of his apprehension.") **with Commonwealth v. Crispell** 193 A.3d 919, 937 (Pa. 2018) (finding Appellant's arrest for theft in Arizona inadmissible as *res gestae* as it was irrelevant to murder charges he faced in Pennsylvania).

Instantly, Janqdhari asserts evidence of the January 6, 2014 carjacking and January 11, 2014 cell phone store robbery was not *res gestae* evidence as it "did not complete the story because the incidents . . . were not related to the incident for which [Janqdhari] was on trial" and because the prior bad acts were "not part of the same transaction or interwoven in such a manner that failing to elucidate the jury to the information would render the case unintelligible." Brief of Appellant, at 30–31 (quoting **Brown**, **supra** at 332). We disagree.

Detective Grace offered testimony establishing the connection between Janqdhari and the weapons, the getaway vehicle, and the co-conspirator involved in the abortive robbery of Goldman. N.T. Trial, 12/13/17, at 177–79; 213–14. This testimony permissibly "provided the jury with a complete story" of events surrounding the instant crimes. **Robinson**, **supra** at 497. Furthermore, the court instructed the jury that this evidence was before them for the limited purpose "of tending to show a course of conduct . . . [and]

must not be considered . . . in any other way[.]" N.T. Trial, 12/15/17, at 84; *see Brown*, *supra* at 327 (listing limiting instruction as means to reduce prejudice of *res gestae* evidence); *see also Commonwealth v. Roney*, 79 A.3d 595, at 640 (Pa. 2013) ("The jury is presumed to follow the court's instructions."). Consequently, the court did not abuse its discretion by admitting Detective Grace's testimony for the limited purpose of serving as *res gestae* evidence under Rule 404(b)(2). *Robinson*, *supra* at 497.

In his next claim, Janqdhari argues the trial court committed reversible error by permitting White to identify him in court and advocates for the adoption of Massachusetts and Connecticut case law regarding first-time, in-court identifications. *See* Brief of Appellant at 31–35 (citing *State v. Dickson*, 141 A.3d 810, 817 (Conn. 2016) and *Commonwealth v. Crayton*, 21 N.E.3d 157, 169 (Mass. 2014)).

That fact that a witness "could not previously identify [an] appellant does not render [his or her] in-court identification any less admissible. The fact that [the witness] could not identify [the defendant] earlier is relevant only to the weight and credibility of [his or her] testimony." *Commonwealth v. Zabala*, 449 A.2d 583, 587 (Pa. Super. 1982).

At trial, the Commonwealth informed the court that White had previously told police she did not believe she could identify the perpetrator. N.T. Trial, 12/12/17, at 6–7. The Commonwealth, nonetheless, requested the court allow White to make an identification if, on the stand, White said she

- 9 -

could do so. *Id.* at 7. The court granted the Commonwealth's request, and White later identified Janqdhari by pointing at him. *Id.* at 7, 112–13. Janqdhari's trial counsel thoroughly cross-examined White, confronting her with a copy of the statement she gave to detectives wherein White stated she did not think she could identify the perpetrator because "[i]t was dark out there." *Id.* at 128–38.

As the instant factual circumstances purely implicate weight and credibility, it is not for this Court to revisit what importance, if any, the jury accorded White's testimony. *See Zabala*, *supra* at 587 (finding prior inability to identify defendant speaks to weight and credibility); *see also Commonwealth v. Steffy*, 339 A.2d 690, 694 (Pa. Super. 1979) ("If the circumstances surrounding the identification were questionable, it was for the fact-finder to make that determination in weighing the credibility of the witnesses and the weight of the evidence."). Further, we note Janqdhari's presence the night of the shooting is not in dispute. *See* N.T. Trial, 12/14/17, at 73–75 (admitting at trial, on the night in question, he was: 1) at the "at the apartment complex on Germantown and Logan[;]" 2) meeting "Sean Goldman[;]" and 3) he saw Goldman and "Tia White" at the apartment complex). Consequently, his second claim fails.

In his third claim, Janqdhari argues the trial court abused its discretion by permitting the prosecutor to introduce impermissible hearsay in the form

of Goldman's prior statement to police wherein Goldman averred he believed his friend Justin returned fire at Janqdhari. Brief of Appellant, at 35–37.

Hearsay, defined as an out-of-court statement offered for the truth of the matter asserted, is inadmissible except as provided by specifically enumerated exceptions under the Pennsylvania Rules of Evidence. *See* Pa.R.E. 801; *see also* Pa.R.E. 802. One such exception permits the admission of a witness's prior statement, under circumstances where the prior statement is both "inconsistent with the declarant-witness's testimony" and "is a writing signed and adopted by the declarant.[11]" Pa.R.E. 803.1(1)(B). To be admissible under Rule 803.1(1), the prior statement must genuinely differ from the statement offered at trial. *Compare Commonwealth v Stays*, 70 A.3d 1256, 1261–62 (Pa. Super. 2013) (finding witness's transcribed statement to police identifying appellant as shooter sufficiently inconsistent with in-court testimony denying shooter was in the courtroom) *with Commonwealth v. Rayner*, 153 A.3d 1049, 1062 (Pa. Super. 2016) (precluding attorney from impeaching witness with grand jury testimony stating assailant wore a black t-shirt, when, at trial, witness stated "the shirt was black with a Polo insignia on it" on grounds that "these statements were not incompatible . . . in the sense required for admission as a prior inconsistent statement.").

---

[11] We note Goldman signed his police statement, fulfilling the second requirement under Pa.R.E. 803.1(1)(B). Goldman Statement, 1/11/13, at 2.

At trial, Janqdhari's counsel, Lee Mandell, Esquire, objected to an exchange between the Commonwealth and Goldman. *See* N.T. Trial, 12/12/17, 95. The Commonwealth initially asked whether Goldman saw Justin carrying a firearm. *See id* at 84 ("[Commonwealth:] Okay. Did you see Justin with a firearm that night? [Goldman:] No, but he usually carries one."). Subsequently, the Commonwealth read from a copy of the statement Goldman gave to police. *See id.* at 94. The following exchange took place:

> [The Commonwealth:] . . . I'll take you to the second question on the bottom of [p]age 1. "QUESTION: Do you think Justin fired at this male? ANSWER: I think so."
>
> [Attorney Mandell:] Objection. I move to strike anything he may have said. *There is nothing inconsistent about that*,[12] Judge.

_____

[12] The Commonwealth argues Janqdhari waived the instant claim by failing to object earlier at trial when a police officer testified that Goldman stated "his friend Justin returned fire, and he believes he struck the male that shot him." Brief of Appellee, at 18 (citing *Commonwealth v O'Donnell*, 740 A.2d 198, 204 (Pa. 1999) and N.T. Trial, 12/12/17, at 49). *O'Donnell* is by no means controlling; the cited portion briefly discusses the relaxed waiver doctrine in the context of capital murder. *O'Donnell*, *supra* at 204. The "first available opportunity" language cited by the Commonwealth refers to the proposition that Appellants must raise claims of counsel's ineffectiveness at the first available opportunity—*not* for the proposition that allowing facts to enter earlier at trial vitiates any and all objections to the presentation of related evidence later at trial. *See O'Donnell*, *supra* at 204 ("issue of counsel's ineffectiveness is properly raised before this Court when it is the first available opportunity new counsel has had to raise claims of prior counsel's ineffectiveness.") (citing *Commonwealth v. Pizzo*, 602 A.2d 823, 824 (Pa. 1992)). Our review of relevant case law unearthed no support for the Commonwealth's position vis-à-vis waiver. Moreover, Attorney Mandell's statement, "[t]here is nothing inconsistent about that[,]" clearly speaks to an objection concerning the use of prior inconsistent statements. N.T. Trial, 12/12/17, 95.

*Id.* (emphasis added). Following a discussion at sidebar, the court overruled Attorney Mandell's objection. *See id.* at 95.

On appeal, Janqdhari avers Goldman's statement was inadmissible hearsay because "[t]he detective's question was substantially different from the prosecutor's question" and "[t]he different answers to these different questions were not inconsistent." Brief of Appellant, at 37. We disagree. Logically, both questions required Goldman to answer whether Justin had a gun. N.T. Trial, 12/12/17, at 84, 94. Legally, the disparity in his answers— wherein Goldman first stated Justin fired shots, then, at trial, said Justin did not even have a gun—certainly qualifies as an inconsistency under Rule 803.1(1). *See Stays*, *supra* at 1261–62 (finding inconsistent identification of shooter admissible); *see also Rayner*, *supra* at 1062 (finding more detailed statement consistent and inadmissible). As such, admitting the statement was not an abuse of discretion. *Id.*

Next, Janqdhari claims the trial court abused its discretion by permitting Officer Judith Kinniry to testify about whether an object she recovered near the red Toyota was a makeshift silencer. *See* Brief of Appellant, at 38.

The Commonwealth did not offer Officer Kinniry as an expert in any respect. Therefore, the admissibility of her opinion testimony is governed by Pa.R.E. 701, which limits the testimony of lay witnesses as follows:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a)    rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of [Pa.R.E.] 702.

Pa.R.E. 701.

"Generally, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder." **Commonwealth v. Berry**, 172 A.3d 1, 3–4 (Pa. Super. 2017). Police officers, serving as lay witnesses, may testify to readily observable facts that do not require specialized training. **See Commonwealth v. Gause**, 164 A.3d 532, 538 (Pa. Super. 2017) (affirming propriety of police officers offering lay testimony as to "someone's readily observable condition or appearance that does not require medical training."); **see also Commonwealth v. Griffith**, 32 A.3d 1231, 1238 (Pa. 2011) (finding need for expert versus lay testimony when prosecuting DUI rests on "the nature and overall strength of the Commonwealth's evidence" in context of whether factual issue "requires knowledge beyond the ken of the ordinary layman.").

Instantly, Officer Kinniry testified to having limited experience with silencers. **See** N.T. Trial, 12/13/17, at 61 ("Had you previously seen objects like this [silencer]? . . . "Probably like four, five [times]."). She then opined the object retrieved near the red Toyota was a silencer. **See id.** at 59 ("I

- 14 -

observed on the sidewalk a black cylinder generally used for silencing of a gun wrapped in black tape.").

Officers in this Commonwealth are regularly admitted as experts to identify factory-standard firearms and ammunition, though these are items with which firearms owners might be familiar. *See, e.g.*, *Commonwealth v. Cousar*, 154 A.3d 287, 295 (Pa. Super. 2017) (admitting officer as firearms identification expert to identify .357 revolver); *Commonwealth v. Ramos*, 827 A.2d 1195, 1198 (Pa. Super. 2003) (admitting officer as firearms identification expert to identify caliber of fatal bullet). Here, Officer Kinniry offered a factual description that could alternatively lead an everyday citizen to picture either an illegal, ersatz firearms accessory[13] or trash. *See* N.T. Trial, 12/13/17, at 59 ("a black cylinder . . . wrapped in black tape."). Nothing indicates that the item described would be identifiable as a silencer to the ordinary, law-abiding firearms owner, let alone the "ordinary layman." *Griffith*, *supra* at 1238. Consequently, the court erred by admitting Officer Kinniry's lay opinion. *Id.*

_____

[13] Silencing a firearm is broadly prohibited in Pennsylvania. *See* 18 Pa.C.S.A. § 908 (a), (c) ("a person commits a misdemeanor of the first degree if, except as authorized by law," he or she possesses, *inter alia*, a "firearm . . . specially adapted for . . . silent discharge."); *see also Commonwealth v. Stewart*, 495 A.2d 584, 593 (Pa. Super. 1985) ("the fact that one can be convicted of a violation of Section 908 for mere possession of the prohibited items . . . clearly indicates that the legislature intended to prohibit the items enumerated in [S]ection 908 from being in free circulation in society."). We note the Commonwealth did not charge Janqdhari under Section 908. *See* Criminal Complaint, 1/13/14, at 3.

Nevertheless, the court's error was harmless. Harmless error exists if the Commonwealth proves any of the following:

> (1)    the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Burno***, 154 A.3d 764, 787 (Pa. 2017).

Instantly, the Commonwealth asserts the third ground for harmless error applies. ***See*** Brief of Appellee, at 23. We agree. Janqdhari and Williams went directly to Einstein Hospital after their attempt to rob Goldman went awry. N.T. Trial, 12/12/17, at 44–48; N.T. Trial, 12/13/17, at 30–31. Shortly thereafter, Goldman, lying in his hospital gurney, identified Janqdhari as his shooter. ***Id.*** at 90. After being read his rights, Janqdhari confessed to a series of crimes, including shooting Goldman. N.T. Trial, 12/13/17, at 202–11. The police investigation later independently confirmed the veracity of Janqdhari's confession through video and DNA evidence. ***Id.*** at 213–14; N.T. Trial, 12/14/17, at 60. Consequently, the prejudice introduced by the admission of Officer Kinniry's opinion is rendered insignificant by the overwhelming amount of properly admitted and uncontradicted evidence of Janqdhari's guilt. ***See Commonwealth v. Jacoby***, 170 A.3d 1065, 1086 (Pa. 2017) (finding erroneous introduction of gun barrel rendered insignificant by Commonwealth's overwhelming evidence of defendant's guilt).

Next, Janqdhari argues the verdict was against the weight of the evidence because Goldman and White offered contradictory versions of the night in question, specifically referencing: (1) whether or not Goldman and White were waiting for a bus; (2) the extent of visibility provided by nearby streetlights; and (3) the number of people on the steps. *See* Brief of Appellant, at 40–43.

We review the trial court's exercise of discretion in ruling on the weight claim, not the underlying question of whether the verdict was against the weight of the evidence. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). It is not our role, as a reviewing court, to reweigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Mitchell*, 902 A.2d 430, 449 (Pa. 2006). Where the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review is extremely limited; unless the evidence is so unreliable "as to make any verdict based thereon pure conjecture, [such claims] are not cognizable on appellate review." *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009). We may only grant relief if the trial court's verdict is "so contrary to the evidence as to shock one's sense of justice." *Champney*, *supra* at 408.

In his Rule 1925(a) opinion, the Honorable Giovanni Campbell stated as follows:

> The evidence of [Janqdhari's] guild was overwhelming. He was identified by the victim in the hospital and in court, and by an eye-witness. He was linked to the events by DNA. He used a car and was connected to guns he had used to steal the car in an armed

carjacking a week earlier and in a phone store robbery a few hours earlier. He confessed to the crime in a written statement. Moreover, his testimony as to the circumstances of the shooting and of the taking of his statement was wholly incredible.

Pa.R.A.P. 1925(a) Opinion, 12/3/18, at 13.

As demonstrated by our harmless error analysis above, we find the trial court did not abuse its discretion in ruling on Janqdhari's weight claim; the evidence against Janqdhari was overwhelming. As such, his weight claim fails. ***Champney***, ***supra*** at 408; ***see also Commonwealth v. Horne***, 89 A.3d 2014 (Pa. Super. 2014) ("Here, the jury resolved the inconsistencies among the testimonies as it saw fit and reached a verdict.").

In his final claim, Janqdhari avers the trial court abused its discretion by imposing an aggregate term of twenty-five to fifty years of state-level incarceration to be served consecutively to a separate 40-year federal sentence. ***See*** Brief of Appellant, at 26

This claim implicates the discretionary aspects of Janqdhari's sentence. Such a claim does not entitle an appellant to review as a matter of right. ***Commonwealth v. Swope***, 123 A.3d 333, 337 (Pa. Super. 2015). Rather, before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a

substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.*, quoting **Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa. Super. 2011).

Here, Janqdhari filed a post-sentence motion to reconsider sentence, followed by a timely notice of appeal to this Court. He has also included in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence pursuant to Pa.R.A.P. 2119(f). Accordingly, we must now determine whether he has raised a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Griffin**, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

In his Rule 2119(f) statement, Janqdhari argues the trial court imposed a "de facto life sentence." Brief of Appellant, at 26. This conclusory argument, however, fails to present a substantial question, as it fails to assert why his sentence contravenes fundamental norms underlying the sentencing process. **Griffin**, **supra** at 935. Next, Janqdhari argues the trial court's sentence was

"clearly unreasonable." Brief of Appellant, at 26. A bald claim of excessiveness does not present a substantial question for our review. ***Commonwealth v. Haynes***, 125 A.3d 800, 807–808 (Pa. Super. 2015). Finally, Janqdhari avers it was manifestly excessive for the court to impose consecutive state sentences following his federal sentence. ***See*** Brief of Appellant, at 27–28. He, however, fails specify what portion of the Sentencing Code was violated by his within-guideline sentence. ***See Griffin***, ***supra*** at 935; ***see also Commonwealth v. Gonzalez-Dejesus***, 994 A.2d 595, 599 (Pa. Super. 2010) (finding no substantial question raised by imposition of consecutive sentences in light of criminal conduct at issue, including "a 'crime spree' [involving] an armed robbery . . . a kidnapping . . . [and] a car theft."). In light of the conduct at issue in this case, including escalating criminal activity ultimately resulting in a coordinated armed robbery and subsequent shooting, we do not find Janqdhari has raised a substantial question for our review. ***Id.*** Consequently, we are compelled to deny his request for allowance of appeal. ***Id.***

Judgment of sentence affirmed.

Judge Nichols joins this Memorandum.

Judge McLaughlin files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/19