J-S17008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                      :        PENNSYLVANIA
                                        :
           v.                            :
                                        :
ISMAEL MYRICK                  :
                                        :
           Appellant            :    No. 1724 EDA 2021

Appeal from the PCRA Order Entered August 12, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001147-2014

BEFORE: BOWES, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                **FILED AUGUST 18, 2022**

Ismael Myrick appeals from the order that denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm.

The PCRA court summarized the underlying facts of the case as follows:

> At approximately 9:10 a.m. on January 2, 2014, Nelson Suah was walking past the corner of 66th and Allman Streets in Southwest Philadelphia when he saw [Appellant], whom he had known for approximately four years. [Appellant] waved Mr. Suah over to a purple minivan. Suah joined him inside it, getting into the front passenger seat. When [Appellant] asked Suah to resume selling drugs for him, Suah demurred because he had recently started a job. [Appellant] climbed into the back seat, retrieved a silver revolver, and hit Suah in the face. The blow cut Suah's left cheek. They began to struggle over the gun, and Suah managed to knock the barrel away. When Suah succeeded in unlocking the door, both men fell out of the van and onto the street. Suah pushed [Appellant] back and fled towards 65th Street. He heard shots and looked back to see [Appellant] pointing the gun in the air. [Suah] then heard bullets pass by his head as he ran. Concerned for the children and parents approaching the elementary school on the corner, Suah tried to run in a different direction to draw the gunfire away from them.

He saw a police car two blocks away and flagged it down, his face bleeding.

Meanwhile, Michelle Johnson was in her [office] in the Joseph W. Catherine Elementary School when she heard gunshots and noticed a burning smell. She looked out her open window facing 66th Street and saw the rest of the shooting and Mr. Suah's flight down the street. After directing her students to take cover, she looked outside again and saw the shooter get into the purple minivan, still holding the gun in his hand, and then drive to Chester Avenue. She and the school's cook recorded the van's license plate, which was later provided to the police.

Police officers were dispatched to the area based on a report of [a] man with a gun. Frantic and bleeding, Mr. Suah flagged them down. He reported that [Appellant] had hit him in the face with a gun inside [Appellant]'s purple minivan and then shot at him.

That same day, police went to [Appellant]'s home on South 66th Street. When he arrived soon afterward, officers brought Mr. Suah to [Appellant]'s house. Suah identified [Appellant] as the assailant.

Within an hour of the shooting, police found the purple van parked on the 6700 block of Dicks Avenue with the same license plate recorded by Ms. Johnson. Officers searched the van pursuant to a warrant and found a black and blue hoodie sweatshirt that later tested positive for gunshot residue and the victim's blood. Blood recovered from the passenger seat of the van also belonged to the victim.

. . . .

On November 5, 2015, at the conclusion of his jury trial, [Appellant] was convicted of aggravated assault, possessing an instrument of crime, reckless endangerment, carrying a firearm without a license, and carrying a firearm on a public street. After dismissing the jury and conducting a bifurcated trial, this court further convicted [Appellant] of carrying a firearm as a prohibited person. On January 7, 2016, after considering all mitigating factors, [Appellant] was sentenced to an aggregate prison term of seventeen to forty-three years.

- 2 -

PCRA Court Opinion, 11/3/21, at 2-3, 1 (cleaned up).

On direct appeal, during which Appellant continued to be represented by trial counsel, Appellant challenged the weight of the evidence and the discretionary aspects of his sentence in addition to the following issue:

Whether the trial court abused its discretion in denying [Appellant's] motions for recusal and mistrial, where the trial court demonstrated manifest bias by cross-examining witnesses in a manner clearly intended to undermine testimony proffered by those witnesses which was favorable for [Appellant] and thereby bolster the Commonwealth's case, and the trial court repeatedly threatened, insulted and demeaned [Appellant's] trial counsel?

*Commonwealth v. Myrick*, 188 A.3d 578 (Pa.Super. 2018) (unpublished memorandum at 4-5.) As it is pertinent to the instant appeal, we reproduce herein our analysis and discussion of that issue:

[Appellant] contends that the trial court abused its discretion by denying [Appellant]'s motion for recusal and mistrial. [Appellant] first asserts that the trial court exhibited bias when cross-examining witnesses. [Appellant] claims that, when Suah initially testified that he did not see a firearm in [Appellant]'s hand, the trial court improperly

clarified for Suah with a leading question, by asking Suah didn't he mean that he didn't see a firearm in [[Appellant]'s] hand when shots were being fired, but did see the .357 Magnum in [Appellant's] hand when [Appellant] pistol-whipped Suah inside the van, which Suah responded in the affirmative.

[Appellant] also points to Johnson's inconsistent testimony, and asserts that the trial court "cross-examined her about her answer to Officer Song regarding her job title, during which the trial court asked her 'why she was having trouble remembering whether she told the truth.'" [Appellant] claims that the trial court improperly threatened Johnson with perjury if she recanted her post-incident statement to police.

Next, [Appellant] contends that the trial court repeatedly insulted and taunted defense counsel. According to [Appellant], when defense counsel objected to the Commonwealth's summary of the facts from [Appellant]'s prior attempted rape case, the trial judge exhibited bias when he asked counsel if he was contesting the accuracy of the summary:

> The court: This is really a simple question. If you can't answer it, I'll ask someone in the audience to answer it for me. I'm sure everybody here understands this question. I hope you do too. Are you contesting the accuracy of the summary?
>
> Defense counsel: From the standpoint that we don't have the actual affidavit of probable cause, yes.

[Appellant] asserts that the trial judge also exhibited bias when he did not permit defense counsel to summarize a mental health report regarding [Appellant], despite having permitted the Commonwealth to summarize the affidavit of probable cause. [Appellant] claims that the trial court further exhibited bias when defense counsel arrived late to the courtroom on the second day of trial. According to [Appellant], the trial judge had instructed counsel to keep their cell phones on, as they would receive a phone call when the jury had been brought in. [Appellant] argues that his defense counsel had not received a call from the court, and the trial judge refused to let defense counsel show the judge his phone to confirm that no call had been received. [Appellant] further points to the trial judge's comments to defense counsel during a hearing on [Appellant]'s motion *in limine* to exclude references to phone calls between [Appellant] and Suah, which originated from the county prison where [Appellant] was incarcerated,[1] and claims that the comments exhibit bias:

> Defense counsel: But, Judge, the Commonwealth—
> the Supreme Court made it clear that—

---

[1] As this Court explained: "While in custody and awaiting trial, [Appellant] used another inmate's phone account to call Suah eighty-five times." **Commonwealth v. Myrick**, 188 A.3d 578 (Pa.Super. 2018) (unpublished memorandum at 3).

The court: Excuse me. Excuse me. Usually when lawyers start out by saying, the Supreme Court has made it very clear, it indicates that they have absolutely no case law to rely on. So, if you have a case, hand it up to me.

According to [Appellant], the trial judge eventually permitted defense counsel to read from the relevant case, but then indicated that he was "not going to listen to a lot of irrelevant cases," and then ordered defense counsel to sit down.

Finally, [Appellant] claims that, at the outset of jury selection, the trial judge instructed counsel to introduce themselves and give a brief outline of the case; but when defense counsel began, the trial court interrupted him and, subsequently, threatened him in front of the jury. [*See*] N.T. (Trial), 11/3/15, at 50 (wherein the trial court advised defense counsel "I told the D.A. no speeches; I told you no speeches. You're going to have to pay attention to what I say, otherwise we're going to have problems; do you understand?").

Based on these exchanges, [Appellant] argues that the trial court erred by denying his motion for mistrial and recusal. [Appellant] contends that the trial judge's conduct toward defense counsel "was manifestly unreasonable and demonstrated egregious ill will, prejudice, partiality, bias, against [Appellant] and his attorney, which is wholly indicative of [Appellant's] manifestly excessive sentence." [Appellant] asserts that, based on the trial judge's conduct, he abused his discretion by denying [Appellant]'s motion for mistrial and recusal.

In its opinion, the trial court addressed [Appellant]'s third issue, and noted that [Appellant] had failed to identify in his concise statement which witnesses the trial court had purportedly cross-examined in a manner that demonstrated bias to [Appellant]. Although the trial court reviewed the record in an attempt to "guess" the witnesses to which [Appellant] referred, the trial court was not required to do so. Notably, numerous witnesses testified over the course of [Appellant]'s trial. As [Appellant] failed to identify in his concise statement the witnesses purportedly cross-examined by the trial court in a manner that demonstrated bias, [Appellant] failed to preserve the issue for our review.

The trial court further noted that, in his concise statement, [Appellant] failed to identify any of the "insults and taunts of defense counsel which arose to bias." As [Appellant] failed to identify in his concise statement the specific manner in which the trial court insulted and taunted defense counsel, he failed to preserve the issue for our review.

Finally, the trial court addressed [Appellant]'s issue that the trial court threatened defense counsel in front of the jury, and concluded that [Appellant]'s counsel failed to make a timely objection to the trial court's remarks. The trial court further determined that its comments were appropriate in light of the court's prior instructions to counsel. Based on our careful review, we agree with the reasoning of the trial court, and affirm on this basis as to [Appellant]'s third issue.

*Id*. (unpublished memorandum at 11-15) (cleaned up). Appellant's timely petition for allowance of appeal from this Court's affirmance was denied. ***See Commonwealth v. Myrick***, 193 A.3d 889 (Pa. 2018).

Appellant filed a timely *pro se* PCRA petition, and counsel was appointed and filed an amended petition, raising claims that trial/direct appeal counsel was ineffective. The PCRA court denied the petition without a hearing after issuing notice of its intent to do so pursuant to Pa.R.Crim.P. 907. Appellant filed a timely notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents this Court with the following issues:

I.    Did the PCRA [court] err when it found that Appellant had not been denied his rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution when defense counsel ineffectively failed to timely object, seek the judge's recusal, request a mistrial and/or a curative instruction after the court repeatedly exhibited extreme bias, animus and hostility toward the defense?

II. Did the PCRA court err when it found that Appellant was not denied his rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution when trial counsel ineffectively failed to object and request a mistrial and a curative instruction when the trial judge inferred in front of the jury that Michelle Johnson was lying and for threatening her with perjury charges if she didn't recall or testify consistent to her statement to police?

III. Did the PCRA court err in finding that Appellant's constitutional rights to due process of law and a fair trial were not violated by the cumulative impact of counsel['s] ineffectiveness in violation of the Sixth and Fourteenth Amendments?

IV. Did the PCRA court err and abuse its' [*sic*] discretion in not recusing itself from consideration of this PCRA petition after a timely motion for recusal was filed by the Appellant?

Appellant's brief at 3-4 (unnecessary capitalization omitted).

We begin with a review of the applicable legal tenets. "Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." ***Commonwealth v. Washington***, 269 A.3d 1255, 1262 (Pa.Super. 2022) (cleaned up). "This Court grants great deference to the factual findings of the PCRA court if the record contains any support for those findings. We review the court's legal conclusions *de novo*." ***Id***. (cleaned up).

Appellant's first three issues involve allegations of ineffective assistance of counsel. As this Court has summarized:

[T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence,

- 7 -

ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa.Super. 2019) (cleaned up).

Appellant first contends that the PCRA court erred in denying his claim that trial counsel was ineffective in failing to object, move for recusal, request a curative instruction, or seek a mistrial based upon the trial court's purported hostility toward defense counsel, or failed to preserve the issues for appeal. Specifically, Appellant claims that the trial court demonstrated bias against the defense by: (1) denying him the right to make an opening statement and

chastising counsel for attempting to do so, *see* Appellant's brief at 12-16; (2) holding counsel in contempt for failing to arrive on time for trial, *id*. at 16-17; (3) interrupting and interfering with counsel's cross-examination of witnesses Suah and Johnson, *id*. at 21-27; (4) belittling and summarily dismissing counsel's arguments on motions *in limine*, *id*. at 17-18; and (5) insulting defense counsel at the sentencing hearing. *Id*. at 32-33. Appellant asserts that counsel had no reasonable tactical basis for failing to preserve the claims of judicial bias, and that there is a reasonable probability that the result of the proceeding would have been different but for counsel's errors. *Id*. at 36-37. Appellant further asserts that the existence of judicial bias is a structural error requiring no showing of prejudice. *Id*. at 38-39

We begin our examination of Appellant's first issue by clarifying the facts surrounding his claims. First, the trial court did not prevent Appellant from making an opening statement, but rather took issue with counsel's attempt to give one during the jury selection process rather than limiting himself to introducing himself, his client, and his witnesses as the court had instructed. *See* N.T. Motion, 11/2/15, at 18-19, 30-31. Hence, Appellant's citation to non-binding decisions from other jurisdictions concerning the proper scope of opening statements is wholly inapposite. *See* Appellant's brief at 15. Further, counsel did ask for a mistrial and recusal the morning after the exchange, and we agreed with the trial court on Appellant's direct appeal that the trial court's "comments were appropriate in light of the court's prior instructions to

counsel." *Myrick*, *supra* (unpublished memorandum at 15). Thus, it is the law of the case that the court did not act improperly during jury selection. *See Commonwealth v. Reed*, 971 A.2d 1216, 1220 (Pa. 2009) (indicating that alternate conclusion that claim was meritless even if not waived was a valid holding that constituted the law of the case in a subsequent appeal).

Second, the trial court did not hold counsel in contempt. The certified record reflects that the trial court, outside the presence of the jury, contemplated imposing a fine for counsel's failure to appear on time without a valid excuse. *See* N.T. Trial, 11/3/15, at 5. However, as the PCRA court explained: "Although [Appellant] mistakenly (or dishonestly) asserts now that trial counsel was held in contempt, the record unmistakably reflects that there was no such contempt ruling, much less any acrimony during the cited exchange." Trial Court Opinion, 11/3/21, at 9. The PCRA court's finding is supported by the record. *See* N.T. Trial, 11/3/15, at 5-8.

Third, counsel did indeed raise contemporaneous objections and move for recusal and a mistrial concerning the trial court's questioning of witness Suah. *See* Appellant's brief at 26-29. The reason this Court found the issues concerning the trial court's alleged interference with questioning were waived pertained to counsel's failure to identify the witnesses with sufficient specificity in his Rule 1925(b) statement. *See Myrick*, *supra* (unpublished memorandum at 14-15) ("As [Appellant] failed to identify in his Concise Statement the witnesses purportedly cross-examined by the trial court in a

manner that demonstrated bias, [Appellant] failed to preserve the issue for our review.").

Thus, while Appellant purports to challenge failures by counsel to timely object, to seek the judge's recusal, and to request a mistrial or a curative instruction, the claims within Appellant's first issue that are properly before us are whether counsel was ineffective in: (1) failing to request a curative instruction after his objections were overruled and his motions denied, and (2) failing to preserve for appellate review his claims of error regarding the denial of his motions for recusal and a mistrial. We find merit in neither.

Assuming for the sake of argument that Appellant could establish the arguable merit of his claim that a curative instruction was warranted and that counsel lacked a reasonable basis for failing to request one, Appellant has failed to establish that he was prejudiced by counsel's omission. As the PCRA court aptly explained:

> [T]his court's instructions tempered the impact of any exchanges between trial counsel and this court. At the start of trial, this court charged the jury that the court's own opinion must be disregarded because the jurors were the sole arbiters of the facts and Defendant's guilt or innocence. This court explained to the jury how,
>
>> the process begins with evidence presented mostly from this witness stand. And you do have the best seats in house. The witnesses will be up close to you, you'll be able to, not only hear them, but watch them as they testify. I don't have your seat, because I don't have your job. Your job is to evaluate these witnesses. Their credibility. My job is concerned primarily with legal issues and with manag[ing] this courtroom. I cannot emphasize too much, it would be impossible to

exaggerate how important it is for you to pay attention to the witnesses when they testify.

In its closing instructions, this court further charged the jury that any impression of any opinion the court might appear to hold should be disregarded. More specifically, this court stated,

If at any time I do or say anything, either during the trial or now, during these instructions, that, in any way, implies my opinion with regard to the evidence, the witnesses, what the verdict should be, I want to tell you two things; number one, I have no opinion. And, second, if I had an opinion, it would be the least well-informed opinion in this courtroom. The only opinion that matters in this case with regard to the evidence, the witnesses, and, ultimately, the verdict, is your opinion. Because you are the jury and you're the ones who decide those matters.

In this manner, this court's instructions directed jurors not to ascribe to the court any opinion about the case and to disregard any opinion that they believed this court to hold. These instructions, together with the evidence presented at trial of Defendant's guilt, precluded the prejudice that is a prerequisite to the granting of a new trial.

PCRA Court Opinion, 11/3/21, at 12-13 (cleaned up).

The jury is presumed to have followed the trial court's instructions. ***See***, ***e.g.***, ***Commonwealth v. Purnell***, 259 A.3d 974, 986 (Pa. 2021) ("[T]he law presumes that the jury will follow the instructions of the court.") (cleaned up)). Appellant argues that counsel's requesting a curative instruction "could not have made matters worse." Appellant's brief at 37. This falls short of convincing us that the PCRA court erred in concluding that an additional curative instruction is not likely to have changed the result of the proceeding.

Hence, no relief is due in connection with the lack of a request for a separate curative instruction.

The following legal principles apply to our review of the arguable merit of Appellant's claim that the trial court exhibited such animosity toward trial counsel that recusal and a mistrial were warranted:

> Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as judges, sometimes display. A judge's ordinary efforts at courtroom administration— even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Commonwealth v. Kearney*, 92 A.3d 51, 61 (Pa.Super. 2014) (quoting *Liteky v. U.S.*, 510 U.S. 540, 555-56 (1994)) (cleaned up).

The certified record unquestionably reveals "a stern and short-tempered judge" administering his courtroom. *Id*. Indeed, the court's imperious conduct approaches a breach of a jurist's obligation to "be patient, dignified, and courteous" to lawyers and witnesses. Pa.C.J.C. Rule 2.8(B). Nonetheless, we discern no evidence of favoritism, partiality, or bias in the court's tetchiness, which it expressed more often than not outside of the jury's

- 13 -

presence. For example, as the Commonwealth notes, although the court initially was dismissive of counsel's *in limine* arguments for excluding Appellant's jail phone calls to the victim, it ultimately ruled in Appellant's favor and did not permit the Commonwealth to introduce conversations that referenced Appellant's criminal record. **See** Commonwealth's brief at 14-15 (citing N.T. Trial, 11/3/15, at 40-50).

Overall, while Appellant has highlighted unbecoming judicial conduct, he has not demonstrated that the trial court was biased against him or his attorney such that it was incapable of making fair judgments on the issues before it. Consequently, Appellant has failed to persuade us that the PCRA court abused its discretion in denying his first claim of ineffective assistance of counsel. **Accord Commonwealth v. Rayner**, 153 A.3d 1049, 1060 (Pa.Super. 2016) (rejecting similar claims that "the trial court's interference, commenting on evidence, improper criticism and interruption of defense counsel's closing speeches, denied Appellant his right to due process and a fair trial and impacted [his] Sixth Amendment right to effective counsel" (cleaned up)). Therefore, no relief is due.

Appellant's second issue reasserts that counsel was ineffective in failing "to object and request a mistrial and a curative instruction" in relation to the trial court's questioning of witness Johnson. Appellant's brief at 40. This time, Appellant contends that such actions were required not based upon trial court bias, but because "the [t]rial [j]udge inferred in front of the jury that Michelle

- 14 -

Johnson was lying and for threatening her with perjury charges if she did not recall or testify consistent [with] her statement to police." ***Id***. Appellant argues that the court's questioning of the witness in front of the jury suggested that Johnson "was either stupid or actively lying," and that its questioning of her outside the presence of the jury "made it clear to [her] that if she did not tell the jury that she remembered making all the inculpatory statements attributed to her in the statement, she was going to jail – whether it be for contempt or perjury." ***Id***. at 42, 44. Appellant asserts that this presented the manifest necessity for a mistrial, and counsel rendered ineffective assistance in failing to move for a new trial on this basis, or at least to request a curative instruction.

The PCRA court opined that the issue lacks merit. Specifically, the court indicated that a new trial was not warranted because Johnson did not alter her testimony in response to the court's intervention. ***See*** PCRA Court Opinion, 11/3/21, at 14-15. We agree.

The Commonwealth's questioning of Johnson began as follows:

Q.    Ma'am, did you witness a shooting on January 2, 2014?

A.    Well, there was something that did happen outside my window. It's been a year and 11 months, I will do the best that I can. I don't know what time I was in my office with about three or five students. My window was cracked and I heard pow, pow, pow, pow, pow. I turned around and I looked out of my window, and I saw someone running up the street, with, either, a red or a orange hood.

At that time, there were students in my room. The office had became upset, so I was telling them to get down on the floor.

- 15 -

We were trying to get to the door to exit into the hallway. I managed to crawl to the window and shut my window, because I didn't want anything to come through.

Q.     Ma'am, did you recognize what those -- the pow sounds were?

A.     Well, at first I thought it was firecrackers, and then one of the kids said, Oh, those are gunshots. So I do remember that.

Q.     Do you remember seeing someone firing that gun?

A.     No, I didn't see anyone firing.

N.T. Trial, 11/3/15, at 73-74. After indicating that, while she had no concerns about testifying, she would rather be at work, Johnson confirmed that she had given a statement to police on January 2, 2014 about the incident. Upon reviewing the written, signed statement, Johnson indicated that she did not remember providing information contained therein, such as her address, place of employment, and job title, and the following exchange ensured:

Q.     Ma'am, do you remember being asked: "Q Where do you work and what is your title?"

A.     Well, I guess that would be something that he would have asked me.

        THE COURT:        No, that's not the question. You're looking at a document, do you see that document?

        THE WITNESS:    Yes, I understand the document.

        THE COURT:        Okay. Did you give a statement to the detective?

        THE WITNESS:    Yes, I did.

        THE COURT:        When you spoke to the detective, did you tell him the truth?

- 16 -

THE WITNESS:    Yes, I did.

THE COURT:      Okay.  Is there any question in your mind that, when this statement says, where do you work and what is your title, that the detective asked you that question?

THE WITNESS:    Well, based -- like I said, based on the fact that it was a year-and-a-half ago, I really don't know what he asked.  The fact that --

THE COURT:      At the bottom of the page there's a signature --

THE WITNESS:    Yes, I did sign that.  I'm aware of that.

THE COURT:      Okay.  So when you signed this, you could read what was on the page when you signed it; right?

THE WITNESS:    Yes.

THE COURT:      If he had not asked you that question, if that was not an accurate statement, if there was anything untrue about that, you would have told him that at the time; right?

THE WITNESS:    Yes, I would have.

THE COURT:      Okay.  So why are you having trouble today --

THE WITNESS:    No, I'm not --

THE COURT:      -- trying to remember whether you told him the truth and what you talked to him about?

THE WITNESS:    The question was asked of me, specifically, did I identify my title.  I don't remember if I did or not, that's all I'm saying.

THE COURT:      We'll have the jury leave the room.  Just follow the court officer's direction.

THE COURT OFFICER:  May I, Judge?

- 17 -

All remain seated as the jury leaves the courtroom.

\- - -

(Jury leaves the courtroom at 2:36 p.m.)

\- - -

THE COURT:     Now, you appear to be an educated woman.

THE WITNESS:    Yes, I am an educated woman.  Yes.

THE COURT:     How far did you go in school?

THE WITNESS:    I have a master's degree.

THE COURT:     Have you ever heard of perjury?  Have you ever heard of perjury?

THE WITNESS:    Yes.

THE COURT:     Okay.  You know that that's a crime in Pennsylvania just --

THE WITNESS:    Yes.

THE COURT:     It's okay to say I don't remember if you don't remember.  But if you say I don't remember to avoid answering a question, there are two possibilities:  one, you're in contempt of court and you can be jailed for that. Two, you're committing perjury and you can be prosecuted for that.

Do you understand?

THE WITNESS:    Yes, I do.

THE COURT:     All right.  We can bring the jury back in.

*Id*. at 82-85.

Thereafter, Johnson did not, as Appellant suggests, testify that she remembered making all the inculpatory statements against Appellant included

- 18 -

in her written statement. On the contrary, the certified record reflects that Johnson considered each question and answered it to the best of her ability, sometimes indicating that she remembered providing the information recorded in the statement, sometimes indicating that she did not recall giving the recorded response, and sometimes contradicting the statement, such as by informing the jury that she did not actually see a gun. *Id*. at 91-92. On cross-examination by Appellant's counsel, Johnson again confirmed that she saw no shooting, did not recall giving the description of the shooter recorded in the statement, and did not recognize Appellant as the shooter. *Id*. at 101-02.

Hence, the record does not support Appellant's claim that Johnson was "whipped into shape" by the trial court and coerced to offer testimony favorable to the Commonwealth. *Cf. Commonwealth v. Laws*, 378 A.2d 812, 815 (Pa. 1977) (holding new trial was warranted where the trial court excused the jury and repeatedly had witness's preliminary hearing testimony reread to him, repeatedly asked him if he was telling the truth, and repeatedly warned him of the consequences of perjury, and the witness then recanted his trial testimony and identified the defendant as the perpetrator).

Further, for the same reasons discussed in reviewing Appellant's first issue, we are unpersuaded that a curative instruction was necessary. Even if Appellant's speculation that the jury concluded that the trial court believed Johnson to be lying had any support in the certified record, no specific

cautionary instruction was needed. The trial court instructed the jury in the opening and closing charges that any opinion that the trial court may have appeared to have had was to be disregarded as irrelevant and uninformed. **See** PCRA Court Opinion, 11/3/21, at 12-13 (quoting the opening and closing jury charges). Consequently, Appellant's second issue fails for lack of merit.

In his third allegation of ineffective assistance of counsel, Appellant argues that the PCRA court erred in not concluding that the combined impact of counsel's ineffectiveness violated his right to a new trial. **See** Appellant's brief at 52. Our Supreme Court summarized the law applicable to this claim as follows:

> We have often held that no number of failed claims may collectively warrant relief if they fail to do so individually. However, we have clarified that this principle applies to claims that fail because of lack of merit or arguable merit. When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed.

**Commonwealth v. Spotz**, 18 A.3d 244, 321 (Pa. 2011) (cleaned up).

As detailed above, Appellant failed to establish a single constitutionally-deficient act or omission of counsel. Moreover, we have found a lack of merit, rather than an absence of prejudice, as the basis for affirming the denial of PCRA relief as to most of the claims. Discerning no cumulative prejudice, we conclude that the PCRA court did not err or abuse its discretion in rejecting Appellant's third issue. **Accord Spotz**, **supra** at 321 ("We have denied most of Appellant's claims based on lack of merit, and there is no basis for a claim

of cumulative error with regard to these claims.  With regard to the few claims that we have denied based on lack of prejudice, . . . we are satisfied that there is no cumulative prejudice warranting relief.").

In his last issue, Appellant contends that the PCRA court committed reversible error in refusing to grant Appellant's motion to recuse itself from consideration of the instant PCRA petition.  In so doing, Appellant reasserts his arguments that the trial court exhibited "pervasive animosity and/or [the] appearance of animosity toward the defense."  Appellant's brief at 55.  Since his PCRA claims "directly implicated a judicial determination of the judge's own objectivity," Appellant maintains that recusal was necessary.  *Id*. at 56 (cleaned up).

We are unpersuaded.  First, the fact that the PCRA court was required to rule upon his own objectivity is of no moment, as "recusal motions are routinely addressed in the first instance by the judge whose recusal is sought." ***Commonwealth v. Dip***, 221 A.3d 201, 208 (Pa.Super. 2019).  Furthermore, we have already held that the certified record evinces no actual or apparent bias or partiality against Appellant or the merits of his legal arguments, but rather a lack of tolerance for trial counsel's failure to follow the court's instructions.  Accordingly, we cannot conclude that the PCRA court erred or abused its discretion in failing to recuse itself.

For the reasons stated above, Appellant has failed to establish that the PCRA court erred and that relief is due. We therefore affirm the order that denied his PCRA petition.

Order affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 8/18/2022*